**In re John SPINKS, Helen Spinks, Debtors.**

**Illinois Department of Children and Family Services, Plaintiff,**

v.

**John Spinks, Helen Spinks, Defendants.**

**Bankruptcy No. 98–30997.**
**Adversary No. 98–3201.**

United States Bankruptcy Court,
S.D. Illinois.

May 10, 1999.

Archie Lawrence, Assistant Attorney General, Springfield, IL, for plaintiff.

Steven N. Mottaz, Alton, IL, for defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

This matter is before the Court on the complaint of the Illinois Department of Children and Family Services ("Department") to determine the dischargeability of a debt owed to the Department for the costs of caring for the debtors' children while they were in the Department's custody. The Department contends that the debtors' obligation is nondischargeable pursuant to § 523(a)(18), which excepts from discharge a debt owed to a state under state law that is "in the nature of support" and "enforceable under part D of title IV of the Social Security Act." *See* 11 U.S.C. § 523(a)(18). The debtors respond that this is not the type of debt covered by § 523(a)(18) and that it is, therefore, dischargeable.

The facts are undisputed. On September 22, 1992, the debtors' four minor children were placed in a shelter care facility under the guardianship of the Department after a state court hearing on the disposition serving the best interests of the children. Between December 1, 1992, and May 7, 1993, the Department provided

child welfare services in the nature of care and training for the debtors' children.

The Department subsequently sought reimbursement from the debtors for the costs of such services pursuant to the Illinois Children and Family Services Act, which imposes liability on the parents of children placed with the Department to pay sums representing charges for the "care and training" of those children. *See* 20 Ill.Comp.Stat. 505/9.1.[1] The Department obtained a default judgment against the debtors in the amount of $7,442.28 plus 9% interest for these charges. In April 1998, the debtors filed for Chapter 7 bankruptcy relief, and the Department initiated this proceeding to determine the dischargeability of the debtors' obligation to the Department.

Subsection 523(a)(18), at issue in this case, was added to § 523 of the Bankruptcy Code as part of the Welfare Reform Act of 1996, which became effective August 22, 1996. Specifically, § 523(a)(18) excepts from discharge any debt

> (18) owed under State law to a State ... that is—
>
> (A) in the nature of support, and
>
> (B) enforceable under part D of title IV of the Social Security Act (42 U.S.C. 601 *et seq.*).

11 U.S.C. § 523(a)(18). Along with adding § 523(a)(18), the Welfare Reform Act also amended § 656(b) of the Social Security Act, which provides regarding the dischargeability of support obligations in bankruptcy:

> (b) A debt (as defined in section 101 of Title 11) owed under State law to a State ... *that is in the nature of sup-*

*port and that is enforceable under this part* is not released by a discharge in bankruptcy under Title 11.

42 U.S.C. § 656(b) (emphasis added).[2]

The overlap between § 523(a)(18) of the Bankruptcy Code and § 656(b) of the Social Security Act indicates that Congress intended to ensure that certain support obligations owed to the states would not be dischargeable in bankruptcy. *See* H.R.Conf.Rep. No. 104–725, 104th Cong., 2d Sess. at 375 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2649, 2763. Given the substantial delegation of authority from the federal government to the states in the area of public welfare and assistance, these provisions eliminate any question as to the nondischargeability of applicable state claims against support obligors. *Collier on Bankruptcy,* ¶ 523.24 at 523–109 (15th ed. rev.1997).

The debt at issue in the present case is, admittedly, an obligation owed under state law to an agency of the state. However, the debtors contend that this debt is not the type of "support" obligation contemplated by § 523(a)(18) and, further, that it is not "enforceable under [Title IV–D] of the Social Security Act." The Court has found no case that addresses the dischargeability of an obligation such as that at issue here and believes this case to be one of first impression.

■ Typically, support claims that are "enforceable under [Title IV–D] of the Social Security Act" concern obligations owed pursuant to a divorce decree or other order imposing a support obligation against a noncustodial parent.[3] Title IV–

---

**1.** Section 9.1 provides, in pertinent part:

The parents ... of children accepted for care and training under the ... Juvenile Court Act of 1987 ... shall be liable for the payment to the Department, or to a licensed or approved child care facility designated by the Department[,] of sums representing charges *for the care and training of those children* at a rate to be determined by the Department.

20 Ill.Comp.Stat. 505/9.1 (emphasis added).

**2.** Section 656(b) is contained in Part IV of the Social Security Act, so its language essentially mirrors that of § 523(a)(18).

**3.** Title IV of the Social Security Act provides for "grants to states for aid and services to needy families with children and for child-welfare services." *See* 42 U.S.C. §§ 601–679(b) (1998). Part D relates to "child support and establishment of paternity." *See* 42 U.S.C. §§ 651–669b.

D, added to the Social Security Act in 1975, mandates a federal-state program for establishing paternity and enforcing child support from absent parents. States receiving federal funds for aid to families with dependent children are required to maintain a program for the enforcement of child support obligations.[4] Under state laws enacted pursuant to Title IV–D, the custodial parent's rights to child support are automatically assigned to the state as a condition of receiving aid. The state may then enforce these rights and seek to recoup its aid expenditures by collecting support payments from the absent parent. *See generally* Amy Watkins, *The Child Support Recovery Act of 1992: Squeezing Blood From a Stone,* 6 Seton Hall Consti. L.J. 845, 854–55 (1996).

The Department, although conceding that the debt in this case is not a child support obligation assigned to the state as a condition of receiving aid, argues that it nevertheless constitutes a support obligation enforceable under Title IV–D. The Department characterizes the amounts expended for care and training of the debtors' children as "foster care maintenance payments" and asserts that the debtors' obligation is "in the nature of support" even though it is an assessment for costs incurred on behalf of children placed in the Department's care and is not to reimburse the state for public assistance payments made to the children.

Federal funding for "foster care maintenance payments" is provided, not under Title IV–D which governs enforcement of support orders for children receiving aid, but under Title IV–E of the Social Security Act. *See* 42 U.S.C. §§ 670–679b. A state that receives federal funds for assistance to needy children must adopt a plan for foster care as provided in Title IV–E. Section 672(a) of Title IV–E defines those children qualifying for federal "foster care

maintenance payments," providing in relevant part: (a) the children must have been removed from their home pursuant to a judicial determination that continuation in the home would be contrary to their welfare (§ 672(a)(1)); (b) the children's placement and care must have been the responsibility of the agency administering the state's foster care plan (§ 672(a)(2)); (c) the children must have been placed in a child care institution as a result of the judicial determination (§ 672(a)(3)); and (d) the children must either have been receiving aid under the AFDC program or have been eligible to receive such aid if application had been made (§ 672(a)(4)). *See* 42 U.S.C. § 672(a). In addition, the statute provides as a threshold requirement for receipt of "foster care maintenance payments" that the child in question must "have qualified" as a "dependent child" under the Act but for his or her removal from the home. *See* 42 U.S.C. § 672(a); *see also Land v. Anderson,* 55 Cal.App.4th 69, 63 Cal.Rptr.2d 717, 720–21 (Ct.1997).

Although "foster care maintenance payments" are provided under Title IV–E rather than Title IV–D, this does not preclude a state agency that incurs costs for a child placed in its custody from enforcing a parent's liability for these costs under Title IV–D. Indeed, in this case, § 9.1 of the Illinois Children and Family Services Act, under which the debtors' liability was assessed, specifies that the Department

> may provide by rule for referral of Title IV–E foster care maintenance cases to the Department of Public Aid for child support services under Title IV–D of the Social Security Act.

20 Ill.Comp.Stat. 505/9.1. The Department has, in fact, provided for such referral by administrative rule. Section 352 of the Illinois Administrative Code, which regulates parents' financial responsibility

---

4. Federal funding to states was formerly provided under the Aid to Families with Dependent Children program ("AFDC"). The Welfare Reform Act of 1996 ended the AFDC program and, instead, provides block grants to states for "temporary assistance for needy families." *See* 42 U.S.C. §§ 601–619 (1998).

for services provided to children placed in "substitute care,"[5] states in subpart 4(i):

(i) When substitute care services are provided ... and the child is Title IV–E eligible ..., and the Department is unable, after exhausting every reasonable effort, to assess and/or collect liability against the parent(s), *the Department shall refer such cases to the Department of Public Aid for Title IV–D ... support services.*

89 Ill.Adm.Code 352.4(i) (emphasis added).

█ The mandatory language of § 352.4(i) requiring the Department to refer Title IV–E cases for Title IV–D support services when other means of enforcement fail leads the Court to conclude that the liability of parents for costs incurred by the Department for children placed in its care is "enforceable under Title IV–D." This conclusion is buttressed by § 160.10 of the Illinois Administrative Code, which states that " 'Title IV–D cases' consist of ... *(3) children receiving foster care maintenance payments under Title IV–E of the Social Security Act.*" 89 Ill.Adm. Code 160.10(a)(3) (emphasis added). Title IV–D is implemented by the Department of Public Aid through its Division of Child Support Enforcement. 89 Ill.Adm.Code 160.10(b). Thus, in addition to its function of collecting child support obligations assigned as a condition of receiving public assistance, the Division of Child Support Enforcement also provides Title IV–D enforcement services for obligations assessed under Title IV–E against parents of children receiving foster care services.

█ Because Title IV–E obligations for foster care payments made on behalf of

a debtor's children are "enforceable under Title IV–D," such obligations may be found to be nondischargeable under § 523(a)(18) even though they would not qualify under § 523(a)(5), which excepts from discharge only those support debts that have been "assigned to" the state or other governmental entity.[6] The Court finds no merit in the debtors' further assertion that the debt in the present case is not a support debt for purposes of § 523(a)(18) because it was assessed to reimburse the Department for its costs and was not the result of a order providing for the children's support. The language of § 523(a)(18) providing an exception to discharge for debts "in the nature of support" is sufficiently broad to include a debt for the costs of caring for the debtors' children while they were in Department's custody. The fact that the debt now takes the form of reimbursement to the state does not alter its underlying function of providing support for the debtors' children. Thus, the debtors' obligation to reimburse the Department for costs incurred in the "care and training" of the debtors' children is the type of support debt that would qualify as nondischargeable under § 523(a)(18).

█ Having reached this conclusion, however, the Court finds that the facts of this case fail to establish that the payments made by the Department on behalf of the debtors' children constitute "foster care maintenance payments" under § 672(a). While the requirements of three of the four subsections of 42 U.S.C. § 672(a) are met—the children were removed from their home pursuant to a judicial determination that continuation in the home would be contrary to their welfare

---

**5.** Section 352.3(a) of the Code states:

Parents ... of children placed by or with the Department away from their parents in substitute care living arrangements for child protective or child welfare reasons are liable for payment to the Department ... for the substitute care services provided.
89 Ill.Adm.Code 352.3(a).

**6.** The discharge exception of § 523(a)(5) is limited to support obligations arising in the

context of a marital dissolution or other domestic relations proceeding. It was amended in 1984 to include in the discharge exception those support debts that have been assigned to the state as a condition of receiving aid. However, it does not include a support obligation owed directly to the state, such as that at issue in the present case. *See Dekalb Div. Of Family and Children Servs. v. Platter,* 140 F.3d 676, 681 (7th Cir.1998).

(§ 672(a)(1)); the children's placement and care were the responsibility of the Department as the agency administering the state's foster care plan (§ 672(a)(2)); and the children were placed in a child care institution as a result of the judicial determination (§ 672(a)(3))—the Department concedes that the debtors' children were neither receiving aid under the AFDC program nor would they have been eligible to receive such aid if application had been made. *See* 42 U.S.C. § 672(a)(4).[7] In addition, the Department acknowledges that the debtors' children would not have qualified as "dependent child[ren]" but for their removal from the home, which constitutes a threshold requirement for receipt of "foster care maintenance payments." Accordingly, the payments in question do not come within the statutory definition of "foster care maintenance payments," which would be recoverable by the Department through the enforcement mechanisms of Title IV–D.

For this reason, the Court finds that the debtors' obligation to the Department to repay charges incurred for the "care and training" of their children from December 1992 through May 1993 does not come within the discharge exception of § 523(a)(18). Therefore, this debt is dischargeable pursuant to 11 U.S.C. § 727 in the debtors' Chapter 7 bankruptcy proceeding.

---

7. Although the federal AFDC program has since been altered under the Welfare Reform Act of 1996, the relevant statute for purposes of determining the character of the payments in this case is that in effect at the time of the children's removal from the home in December 1992.