MICHAEL DALY HAWKINS, Circuit Judge:
 

 We must decide whether an absent parent who owes money to the county for child support payments made by the county prior to the entry of a child support order can have that debt discharged in bankruptcy. In two earlier cases, we held that an absent parent was entitled to have such a debt discharged.
 
 See Visness v. Contra Costa County,
 
 57 F.3d 775 (9th Cir.1995);
 
 County of Santa Clara v. Ramirez,
 
 795 F.2d 1494, 1497 (9th Cir.1986). Recent changes to the bankruptcy and welfare laws, however, now lead us to conclude that an absent parent who owes money to the county for child support payments is not entitled to discharge any portion of the debt, including the portion that may have accumulated before the entry of a court order.
 

 I. FACTS AND PROCEDURAL BACKGROUND
 

 Paul Alan Leibowitz and his wife Sondra separated in early 1991. Shortly after the separation, in February 1991, Sondra applied to Orange County (“County”) for Aid to Families with Dependent Children (“AFDC”). As a condition for receiving AFDC, she was required under state and federal law to assign to the County any “accrued” rights to support from the children’s father.
 
 See
 
 42 U.S.C.
 
 *801
 
 § 602(a)(26)(A); Cal. Welf. & Inst.Code § 11477(a).
 
 [3]
 

 On May 12, 1992, the County obtained a judgment against Leibowitz pursuant to Cal. Welf. & InstCode § 11350.
 
 [4]
 
 The judgment ordered Leibowitz to pay $372 per month in child support and to reimburse the County $5,580 for AFDC payments made to Sondra from February 1991 to May 1992. Leibowitz did not pay the $5,580 in reimbursement, and in June 1996 he reached an agreement with the County on a monthly repayment plan.
 

 In September 1996, Leibowitz filed a Chapter 7 bankruptcy petition, listing the County as a creditor. After the bankruptcy court granted Leibowitz a discharge of all dischargeable debts, he filed a complaint seeking to determine whether his reimbursement debt to the County was dischargeable. The County moved for summary judgment, arguing that recent amendments to the Bankruptcy Code rendered Leibowitz’s debt non-dischargeable. Specifically, the County cited 11 U.S.C. § 523(a)(18), which prohibits the discharge of a debt owed under state law to a municipality that is “in the nature of support” and “enforceable under Part D of title IV of the Social Security Act.”
 

 Leibowitz opposed the motion, arguing that his debt to the County was neither “in the nature of support” nor enforceable under Title IV-D. The bankruptcy court disagreed and granted summary judgment in favor of the County. On appeal to the Bankruptcy Appellate Panel (“BAP”), Lei-bowitz reasserted his arguments that the debt was neither “in the nature of support” nor enforceable under Title IV-D. The BAP rejected these arguments as well, and Leibowitz appeals. We have jurisdiction under 28 U.S.C. § 158(d).
 

 II. STANDARD OF REVIEW
 

 When a decision of the bankruptcy court is on appeal from the BAP, this court independently reviews the bankruptcy court’s decision.
 
 See In re Michael,
 
 163 F.3d 526, 529 (9th Cir.1998). The bankruptcy court’s interpretation of the Bankruptcy Code is reviewed de novo.
 
 See In re Been,
 
 153 F.3d 1034, 1036 (9th Cir.1998).
 

 III. ANALYSIS
 

 A debtor who successfully navigates the bankruptcy process is ordinarily entitled to a discharge of all pre-petition debts.
 
 See Visness,
 
 57 F.3d at 776. There are certain types of debt, however, that Congress has declared to be non-dischargeable.
 
 See id.
 
 The main list of these debts is found in the Bankruptcy Code at 11 U.S.C. § 523(a). That section provides that “[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt” of the following kind. It then lists several kinds of debt that cannot be discharged.
 

 Prior to 1996, the only one of these provisions that applied to a debt for child support payments was section 523(a)(5). That section provided that a debtor was not entitled to discharge any debt “to a •spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of rec
 
 *802
 
 ord....” 11 U.S.C. § 523(a)(5). But a debtor was entitled to discharge such a debt if it was assigned to another entity, unless the assignment was pursuant to section 42 U.S.C. § 602(a)(26), which is the section under which applicants for AFDC are required to assign their support rights to the government.
 
 [5]
 

 In
 
 Ramirez,
 
 795 F.2d at 1497, we parsed the language of section 602(a)(26) and noted that it requires an applicant for AFDC to assign support rights
 
 “which have accrued,
 
 at the time such assignment is executed.” (emphasis added). We then noted that under California law, a custodial parent does not have a right to support absent a court judgment.
 
 See id.
 
 Putting these two pieces together, we concluded that prior to the entry of a court judgment, a custodial parent has no accrued rights that can be assigned pursuant to section 602(a)(26).
 
 See id.
 
 And because a child support debt assigned to the county was only excepted from discharge if assigned pursuant to section 602(a)(26), we held that an absent parent was entitled to discharge debts owed to the county for pre-judgment AFDC payments.
 
 See id.
 
 We reaffirmed this holding nine years later in
 
 Visness,
 
 57 F.3d at 775.
 

 Leibowitz’s debt to the County derives from pre-judgment AFDC payments, so under
 
 Ramirez
 
 and
 
 Visness
 
 his debt would appear to be dischargeable. However, one year after our decision in
 
 Visness,
 
 Congress passed the Welfare Reform Act of 1996,
 
 [6]
 
 which made several changes to the law of discharge. First, Congress added section 523(a)(18) to the Bankruptcy Code’s list of debts that are non-discharge-able. The new section provides as follows:
 

 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 (18) owed under State law to a State or municipality that is—
 

 (A) in the nature of support, and
 

 (B) enforceable under Part D of title IV of the Social Security Act (42 U.S.C. § 601
 
 et seq.).
 

 11 U.S.C. § 523(a)(18).
 

 Second, Congress altered section 42 U.S.C. § 656(b), which is part of Title IVD of the Social Security Act. Before 1996, section 656(b) provided that “[a] debt which is a child support obligation assigned to a State under section 602(a)(26) ... is not released by a discharge in bankruptcy.” Now section 656(b) provides that “[a] debt ... owed under State law to a State ... or municipality ... that is in the nature of support and that is enforceable under this part [part D of title IV] is not released by a discharge in bankruptcy under Title 11.”
 

 Two important things stand out about section 523(a)(18) and the new section 656(b). First, they are nearly identical; the only difference is that section 523(a)(18) applies specifically to discharges under sections 727, 1141, 1228(a), 1228(b), and 1328(b) of the Bankruptcy Code, while section 656(b) applies to any discharge under the Bankruptcy Code. Second, neither provision refers to an assignment under 42 U.S.C. § 602(a)(26). Instead, they simply state that a debtor may not discharge a
 
 *803
 
 debt that is (1) owed under state law, (2) owed to a state or municipality, (3) in the nature of support, and (4) enforceable under Title IV-D of the Social Security Act.
 

 Leibowitz does not dispute that his obligation here is owed under state law and that it is owed to a municipality. But he argues that the debt is neither “in the nature of support” nor enforceable under Title IV-D.
 

 A.
 
 In the nature of support
 

 Sections 523(a)(18) and 656(b) do not define the term “in the nature of support.” However, the definition section of the Bankruptcy Code defines “debt for child support” as “a debt of a kind specified in section 523(a)(5) of this title for maintenance or support of a child of the debtor.” 11 U.S.C. § 101(12A). Section 523(a)(5), in turn, refers to a debt “to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record....” 11 U.S.C. § 523(a)(5).
 

 Under this definition, Leibowitz’s debt to the County qualifies as one “in the nature of support.” The debt is for the support of his former spouse and children, and it derived from a court order — the May 12, 1992 judgment obtained by the County. It is true that the debt is no longer owed to his former spouse or children, as specified in section 523(a)(5), but that is irrelevant.' We have held that a debt to third parties “on behalf of a child or former spouse can be ‘as much for ... support as payments made directly [to the former spouse or child].’ ”
 
 In re Chang,
 
 163 F.3d 1138, 1141 (9th Cir.1998) (alteration in original) (quoting
 
 In re Catlow,
 
 663 F.2d 960, 962-62 (9th Cir.1981)).
 

 Leibowitz argues that because his debt would be dischargeable under section 523(a)(5) — based on the holdings of
 
 Ramirez
 
 and
 
 Visness
 
 — his debt is not “of a kind specified in section 523(a)(5).” But
 
 Ramirez
 
 and
 
 Visness
 
 did not state that debts for pre-judgment AFDC payments are not “of a kind specified” by section 523(a)(5). Rather, they held that such debts could not be assigned to the county under section 602(a)(26) since they do not arise from support rights “which have accrued.”
 
 Ramirez
 
 and
 
 Visness
 
 are not about the nature of a debt, but about the effect of an assignment on the discharge-ability of a debt.
 

 Leibowitz also argues that a debt is “in the nature of support” only if payment will benefit the children and that forcing him to pay the County will not benefit his children because he will then be unable to afford his current child support payments. Leibowitz’s argument highlights an unfortunate consequence of the welfare and bankruptcy laws, which is that some parents cannot support their children in the present because they are still paying for past support. But from a legal standpoint, the argument is based on a faulty premise. The legal question is not whether repayment of the debt will benefit the children, but whether the basis of the debt benefited the children.
 
 See Chang,
 
 163 F.3d at 1141 (holding that a debt for professional fees and expenses arising from child custody proceedings is “in the nature of support”);
 
 In re Dvorak,
 
 986 F.2d 940, 941 (5th Cir.1993) (holding that guardian ad litem fees were “clearly for the child’s benefit and support” and thus debt was not dischargeable under section 523(a)(5)). The basis of Leibowitz’s debt is AFDC money received by his former wife. That money benefited his former wife and children, and so His debt to the County qualifies under the statute as one “in the nature of support.”
 

 This conclusion is supported by two provisions of the Social Security Act. The first, 42 U.S.C. § 653(p), defines a “support order” as “a judgment, decree, or order ... for the support and maintenance of a child ... which provides for monetary support, health care,
 
 arrearages, or reimbursement
 
 .... ” (emphasis added). The
 
 *804
 
 second, 42 U.S.C. § 659(i)(2), defines “child support” as “amounts required to be paid under a judgment ... for monetary support, health care,
 
 arrearages or reimbursement
 
 _” (emphasis added). These two provisions are strong evidence that a debt can qualify as “in the nature of support” even if the debt provides no current benefits to the child.
 

 Because Leibowitz’s debt to the County derives from AFDC payments made to his former spouse and children, we hold that his debt is “in the nature of support” under 11 U.S.C. § 523(a)(18) and 42 U.S.C. § 656(b).
 

 B.
 
 Enforceable under Title IV-D
 

 Title IV-D of the Social Security Act was enacted in 1975 as the Child Support Enforcement Act.
 
 See
 
 Pub.L. No. 93-647, 88 Stat. 2351 (codified as amended at 42 U.S.C. §§ 651-669). Designed to reduce state and federal expenditures for child support,
 
 see Commonwealth of Pennsylvania v. United States Dept. of Health and Human Services,
 
 80 F.3d 796, 799 (3d Cir.1996), Title IV-D creates a framework for the development of state programs to assist custodial parents in obtaining and enforcing support obligations, locating absent parents, and establishing paternity.
 
 See
 
 42 U.S.C. §§ 651-669. The Title di rects the Secretary of Health and Human Services to oversee the development of these programs, to evaluate their implementation, and to provide technical assistance to the states.
 
 See id.
 
 at § 652(a). It also authorizes the appropriation of money to assist states in their efforts.
 
 See id.
 
 at § 655. States failing to fulfill their duties under Title IV-D risk the loss of federal AFDC funds under Title IV-A.
 
 See
 
 42 U.S.C. § 602(a)(27);
 
 Freestone v. Cowan,
 
 68 F.3d 1141, 1143 (9th Cir.1995),
 
 rev’d on other grounds,
 
 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).
 

 Because Title IV-D establishes a general framework for the collection and enforcement of child and spousal support debts by the states, it is unclear what Congress meant by the term “enforceable under Part D of Title IV.” No other circuit has yet addressed the issue, and it is one of first impression before this court.
 

 Leibowitz argues that a debt is only enforceable under Title IV-D if it falls within the parameters of 42 U.S.C. § 656(a)(1). That section is titled “Support obligation as obligation to State,” and prior to passage of the Welfare Reform Act, it provided as follows:
 

 The support rights assigned to the State pursuant to section 602(a)(26) or secured on behalf of a child receiving foster care maintenance payments shall constitute an obligation to such State by the individual responsible for providing such support. Such obligation shall be deemed for collection purposes to be collectible under all applicable State and local processes.
 

 Leibowitz points out that this provision, like 11 U.S.C. § 523(a)(5), refers to an assignment pursuant to section 602(a)(26).
 
 Ramirez
 
 and
 
 Visness
 
 held that pre-judgment child support debts cannot be assigned pursuant to section 602(a)(26) since they have not “accrued.” Therefore, Lei-bowitz argues, his debt for pre-judgment AFDC payments is not an obligation to the state under section 656(a) and is thus not enforceable under Title IV-D.
 

 Without explaining why, the BAP agreed with Leibowitz that a debt is only enforceable under Title IV-D if it falls within the parameters of section 656(a). But the BAP noted that the Welfare Reform Act made two changes relevant to section 656(a). First, Congress replaced the reference to “section 602(a)(26)(A)” with a reference to “section 608(a)(3).”
 
 See
 
 Pub.L. No. 104-193, § 108(c)(13), 110 Stat. 2166.
 
 [7]
 
 At the same time, Congress
 
 *805
 
 deleted the old section 602(a)(26)(A) and replaced it with the new section 608(a)(3).
 
 See
 
 Pub.L. No. 104-193, § 103, 110 Stat. 2112, 2135 (codified at 42 U.S.C. § 608(a)(3)). Now, instead of requiring an applicant for AFDC to assign any support rights “which have accrued at the time such assignment is executed,” section 608(a)(3) requires an applicant to assign any support rights “which accrue (or have accrued) before the date the family ceases to receive assistance under the program.”
 

 As the BAP recognized, this language avoids the effect of our holdings in
 
 Ramirez
 
 and
 
 Visness.
 
 If a custodial parent obtains a court judgement for support before she ceases to receive assistance — as did Leibowitz’s wife — her assignment of pre-judgment debts is now valid. However, section 608(a)(3) and the change to section 656(a) did not take effect in 1996 along with the other provisions of the Welfare Reform Act. They were part of Title I of the Welfare Reform Act, which did not take effect until July 1, 1997, some ten months after Leibowitz filed his bankruptcy petition.
 
 See
 
 Pub.L. No. 104-193, § 116(a), 110 Stat. 2181 (1996). Moreover, the legislative transition rules for Title I state that “[t]he amendments made by this title shall not apply with respect to (A) powers, duties, functions, rights, claims, penalties, or obligations applicable to aid, assistance or services provided before the effective date of this title.... ” Pub.L. No. 104-193, § 116(b)(2), 110 Stat. 2184.
 

 The BAP resolved this problem by concluding that legislative intent undermined the plain meaning of the legislative transition rules. It noted that if section 608(a)(3) did not apply to cases pending before July 1, 1997, the new discharge provisions of section 523(a)(18) and section 656(b) would not bring about any changes to the law of discharge until almost a year after they went into effect. And because it concluded that Congress intended for those two sections to become operable in 1996, the BAP held that section 608(a)(3) and the change to section 656(a) could be applied to cases, like Leibowitz’s, that were pending before 1997.
 

 We disagree with the BAP. The statutory language is clear, and we are not free to disregard Congress’s express determination with respect to the effective date of the statutory changes. We reach the same result, however, for different reasons. Unlike the BAP, we hold that a debt need not meet the criteria of section 656(a) in order to be enforceable under Title IV-D. Section 656(a) is one of twenty-one sections within Title IV-D, and nothing in the language of the Welfare Reform Act or in the legislative history suggests that when Congress said “enforceable under Part D of Title IV” it really meant “enforceable under one small section of Title TV-D.” Indeed, it is hard to believe that Congress would use such broad language to refer to such a narrow provision.
 

 We think the more plausible interpretation is that when Congress used the term “enforceable under Part D of Title IV,” it was referring to the type of debts the states are instructed to enforce and collect under Title IV-D — namely, debts for child and spousal support. This interpretation is more consistent with the broad language used by Congress and is supported by several structural characteristics of Title IV-D.
 

 First, a state participating in the Title IV-D program must not only collect and enforce child support debts that have been assigned to it by AFDC recipients, but must also collect and enforce child support debts on behalf of non-welfare recipients.
 
 See Blessing v. Freestone,
 
 520 U.S. 329, 334, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Thus, to say that the only debts enforceable under Title TV-D are those
 
 *806
 
 that qualify as support obligations to the state under section 656(a) is to disregard an entire category of debts that a state must enforce and collect pursuant to Title IV-D.
 

 This point was recognized by the bankruptcy court in
 
 In re Spinks,
 
 233 B.R. 820 (Bankr.S.D.Ill.1999). “Typically,” the court stated, “support claims that are ‘enforceable under [Title IV-D] of the Social Security Act’ concern obligations owed pursuant to a divorce decree or other order imposing a support obligation against a non-custodial parent.”
 
 Id.
 
 at 822. The court then held that a debt for foster care maintenance payments would be enforceable under Title IV-D because it is the type of debt that a state collects and enforces under Title IV-D.
 
 See id.
 
 at 824. The court did not require that the debt be assigned to the state pursuant to section 602(a)(26),
 
 see id.
 
 at 823, and it did not mention section 656(a) at all.
 

 Second, as pointed out earlier, when Congress passed the Welfare Reform Act, it added the new discharge provision to the Bankruptcy Code at 11 U.S.C. § 523(a)(18) and to the Social Security Act at 42 U.S.C. § 656(b). This latter provision is found in Title IV-D immediately following section 656(a), and it states that “[a] debt ... owed under State law to a State ... or municipality ... that is in the nature of support and that is
 
 enforceable under this part
 
 is not released by a discharge in bankruptcy under Title 11.” (emphasis added). If Congress had intended this provision to apply only to debts that are enforceable under section 656(a), it seems likely it would have used the language “enforceable under this section.” But instead, Congress referred to debts that are “enforceable under this part.” This is strong evidence that Congress intended to include all child and spousal support debts that the states are instructed to collect and enforce under Part D of Title IV.
 

 Leibowitz owes $5,580 to the County for AFDC payments made to his former spouse and children. Under Title IV-D, this is exactly the kind of debt participating states are required to collect and enforce — whether or not the debt has been assigned pursuant to section 602(a)(26). Therefore, we conclude that his debt to the County is enforceable under Title IV-D and is thus non-dischargeable in bankruptcy.
 

 The decision of the BAP is AFFIRMED.
 

 [3]
 

 . At the time the Leibowitzs separated, Section 602(a)(26)(A) mandated that, as a condition of eligibility for aid, an applicant would be required
 

 (A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed.
 

 42 U.S.C. § 602(a)(26)(A). Cal. Welf. & Inst. Code § 11477(a), which implements the federal directive of section 602(a)(26)(A), contained nearly identical language.
 

 [4]
 

 . Section 11350 authorizes a county to seek reimbursement from a non-cuslodial parent for assistance payments made to a custodial parent.
 

 [5]
 

 . Prior to 1996, the full text of section 523(a)(5) provided that a debtor was not entitled to a discharge of any debt
 

 to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
 

 (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State)
 

 [6]
 

 . The official name of the Act is the Personal Responsibility and Work Opportunity Reconciliation Act of 1996. Pub.L. No. 104-193, 110 Stat. 2105 (Aug. 22, 1996).
 

 [7]
 

 . In the Welfare Reform Act, Congress removed the reference to section 602(a)(26), but inadvertently omitted the reference to section 608(a)(3). It corrected the mistake a year later and provided that the correction would apply as of the date the original amendment
 
 *805
 
 took effect.
 
 See
 
 Act Aug. 5, 1997, Pub.L. No. 105-33, §§ 5513(a)(3), 5518(b), 111 Stat 619, 621.