

FILED

NOT FOR PUBLICATION

NOV 29 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:
RITA KATHERINE LUETKENHAUS,
               Debtor.

RITA KATHERINE LUETKENHAUS,
               Appellant,

v.

CAREY SMITH; RICHARD
LUETKENHAUS,
               Appellees.

BAP No. OR-23-1085-CFB

Bk. No. 3:22-bk-31915-DWH

**MEMORANDUM**[*]

Appeal from the United States Bankruptcy Court
for the District of Oregon
David W. Hercher, Bankruptcy Judge, Presiding

Before: CORBIT, FARIS, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtor, Rita Katherine Luetkenhaus ("Rita[2]") appeals the

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all references to "ORS" are to the Oregon Revised Statutes.

[2] For ease of reading and clarity we refer to the parties by their first name, no

bankruptcy court's order overruling her objections to the proof of claim filed by her first ex-husband Carey Smith ("Carey") and the proof of claim filed by her second ex-husband Richard Luetkenhaus ("Richard"). Because we find no error, we AFFIRM.

## FACTS

**A.    History**

### 1.    Rita's first marriage and divorce

Rita and Carey were married in 1993 and had two children together. In 2008, Rita and Carey divorced[3] ("Rita and Carey Dissolution and Child Custody Action"). Initially, Rita was awarded primary custody.

In May 2011, Carey filed a motion in the Rita and Carey Dissolution and Child Custody Action for an order to show cause why custody should not be changed to him. In December 2011, after an evidentiary hearing, Carey was awarded primary custody of the children and, in a supplemental judgment, Carey was awarded $15,000 in attorneys' fees and costs as the prevailing party pursuant to ORS 20.075 and ORS 107.135 ("State Court Judgment"). The State Court Judgment would "bear simple interest at the rate of 9 percent (9%) per annum until paid in full."

Rita appealed both the custody order and the attorneys' fees judgment. In August 2015, the Oregon Court of Appeals "affirmed without opinion" the change in custody and the attorneys' fees awarded in the Rita

---

disrespect is intended.

[3] *Smith v. Smith*, No. C06-2236-DRC, Circuit Court, Washington County, Oregon.

2

and Carey Dissolution and Child Custody Action. The Oregon Court of Appeals also awarded Carey $8,327.75 in attorneys' fees and costs as the prevailing party in the appeal ("State Appellate Judgment").

## 2. Rita's second marriage and divorce

Rita married Richard in August 2008. Rita and Richard had one child together. In 2011, Richard petitioned for divorce. The divorce was finalized in May 2014 ("Rita and Richard Dissolution and Child Custody Action").[4] Richard sought $84,000 in attorneys' fees and costs and was awarded $60,000 ("Richard's State Court Judgment"). The judgment stated that it would bear simple interest at the rate of 9 percent per annum.

## B. Rita's bankruptcies

## 1. Rita's 2012 bankruptcy

On October 24, 2012, while the Rita and Richard Dissolution and Child Custody Action was still pending, Rita filed a chapter 13 bankruptcy petition, case no. 12-38042 ("2012 Bankruptcy"). Rita did not identify Carey as a creditor nor the State Court Judgment as a claim on any of her schedules. Rita's chapter 13 plan did not propose to pay any amount toward the State Court Judgment.[5]

---

[4] *Luetkenhaus v. Luetkenhaus*, C11-2468-DRC, Circuit Court, Washington County, Oregon.

[5] Pursuant to Federal Rule of Evidence 201(b), we exercise our discretion to take judicial notice of materials electronically filed in the underlying cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Carey filed a proof of claim in the amount of $15,629.35 (State Court Judgment plus interest) for "Domestic Relations Orders." In section 5 of the proof of claim, Carey indicated that $629.35 was a domestic support obligation ("DSO") entitled to priority pursuant to § 507(a)(1)(A).

Rita objected to the proof of claim, stating that she was appealing the $15,000 judgment and the $629.35 was for medical bills, not a DSO. The bankruptcy court granted Rita's objection in part by entering an order allowing Carey's proof of claim in the amount of $15,000 as a nonpriority, unsecured claim. There was no explanation or rationale included in the bankruptcy court's order. Because no part of Carey's proof of claim was entitled to priority, Rita was not obligated to provide for payments of the claim in her chapter 13 plan. The bankruptcy court confirmed Rita's chapter 13 plan on January 4, 2013.

In September 2014, Rita sought to dismiss her chapter 13 case because she was not making the plan payments as required, and she alleged that her financial circumstances were such that she was "unable to propose a feasible modified plan." The bankruptcy court granted the dismissal motion on September 8, 2014. At the time Rita's 2012 Bankruptcy was dismissed, it had been pending for 25 months, and the total amount Rita had paid through the plan was $2,819.66 ($943 in attorneys' fees and costs and $1,876.49 to the Oregon Department of Revenue).

### 2.     Rita's 2014 bankruptcy

Rita filed another chapter 13 petition on September 17, 2014, case no. 14-35273 ("2014 Bankruptcy"). By this time, both divorces were final, and Carey and Richard had each recovered money judgments against Rita.

Richard and Carey each filed a proof of claim for their respective attorneys' fees awards. Richard filed a proof of claim in in the amount of $60,192.27 for "Attorney Fees Awarded in a Dissolution" and claimed it as a DSO entitled to priority under § 507(a). The supporting documents demonstrated the claim arose from Richard's State Court Judgment plus interest. Carey filed a proof of claim for a DSO in the amount of $73,589.00[6] for "fees and costs from family court litigation."

Both Richard and Carey also filed objections to confirmation of Rita's plan. Rita's chapter 13 plan was not confirmed, and her case was dismissed.

### 3.     Rita's 2016 bankruptcy

On February 10, 2016, Rita filed another chapter 13 bankruptcy petition, case no. 16-30474 ("2016 Bankruptcy"). Rita also filed a proposed chapter 13 plan on the same day.

Again, Richard and Carey each filed a proof of claim. Richard filed a proof of claim in the amount of $61,183.25 for a "judgment for attorney fees awarded in dissolution of marriage involving a child." The supporting

---

[6] The amount of Mr. Smith's proof of claim included additional anticipated awards of attorneys' fees.

documents demonstrated the claim arose from Richard's State Court Judgment plus interest. Richard alleged that the entire amount was a DSO entitled to priority pursuant to § 507(a)(1).

Carey filed a proof of claim in the amount of $28,163.50 for "DSO attorney fees awarded in state court concerning child welfare." The supporting documents indicated that the claim was comprised of the State Court Judgment plus interest and the State Appellate Judgment plus interest.

Rita objected to both claims, arguing that neither claim was a DSO and, therefore, neither claim was entitled to priority. On August 23, 2016, after an evidentiary hearing, the bankruptcy court entered a letter ruling on Rita's objection to Richard's proof of claim. The bankruptcy court allowed Richard's proof of claim as a DSO in the reduced amount of $48,946.60 (the bankruptcy court determined that 80% of the $61,183.25 was related to custody matters).

Because 80 percent of Richard's claim was allowed as a DSO entitled to priority, the bankruptcy court determined that Rita was obligated to pay that portion of the claim in full through the plan pursuant to § 1322(a)(2). Rita's proposed plan, however, treated both Richard's and Carey's claims as general unsecured claims and did not provide for payment on either claim. Accordingly, the bankruptcy court entered an order denying confirmation of the plan and gave Rita the option of amending her plan to provide payment of Richard's proof of claim or converting to a chapter 7.

On December 12, 2016, after another evidentiary hearing, the bankruptcy court entered a letter ruling on Rita's objection to Carey's proof of claim. The bankruptcy court determined that Carey was precluded from asserting that the State Court Judgment was a DSO, because he had not appealed the bankruptcy court's determination in the 2012 Bankruptcy that the State Court Judgment was a general unsecured claim, not a DSO. However, the bankruptcy court determined that the part of Carey's proof of claim related to the State Appellate Judgment was not, and could not have been, included in the 2012 Bankruptcy proof of claim. After considering the evidence, the bankruptcy court determined the portion of Carey's proof of claim related to the State Appellate Judgment would be allowed as a DSO, entitled to priority and full payment under the plan.

In the letter ruling, the bankruptcy court explained that it would give Rita additional opportunity to propose an amended plan that provided for payment of the DSO portions of Carey's and Richard's claims and that it would "not enter any orders on the claim objections or plan confirmation until that time has run." The letter ruling further advised the parties that "[i]f no request for hearing is filed, claimants should submit orders on the claim objections consistent with this ruling." However, no party ever requested that the bankruptcy court enter an order consistent with its letter rulings on the claim objections.

Rita did not file an amended plan. Rather, she filed a motion to convert her chapter 13 case to a chapter 7 case. On January 5, 2017, the

7

bankruptcy court granted Rita's motion to convert. In Rita's post-conversion schedules, she listed both Richard and Carey as holding claims entitled to DSO priority. On April 12, 2017, Rita was granted a discharge.

### 4. Rita's 2022 bankruptcy

On November 22, 2022, Rita filed her most recent chapter 13 petition, case no. 22-31915 ("2022 Bankruptcy").

Richard and Carey each filed a proof of claim. Richard filed a proof of claim in the amount of $88,085.99 for the "judgment for attorney fees" awarded in the Rita and Richard Dissolution and Child Custody Action. The proof of claim indicated that 80 percent of the amount ($70,468.79) was a DSO entitled to priority.

Carey filed a proof of claim in the amount of $38,575.85 for a "state court judgment money award." Carey asserted that the entire amount of the claim was entitled to priority as a DSO. The supporting documents demonstrated that Carey's proof of claim was comprised of the State Court Judgment totaling $28,601.20 ($15,000 plus $13,601.20 in accrued interest) and the State Appellate Judgment in the amount of $9,974.65 ($8,686.50 award plus $1,288.15 in accrued interest).

Rita objected to both claims. In her objection to Carey's proof of claim, Rita disagreed with the characterization and amount of the claim. Rita asserted that Carey had incorrectly calculated the accrued interest. Rita

8

asserted that Carey's claim should be allowed as a priority claim for $4,415.89 and as a nonpriority, unsecured claim for $34,147.60.[7]

Rita also objected to the characterization and amount of Richard's proof of claim. Rita did not dispute that 80 percent of Richard's proof of claim should be entitled to priority. Rather, Rita disputed the calculation of interest and asserted that Richard had failed to credit several of her garnished-wage payments. According to Rita's calculations, Richard should be allowed a priority claim for $31,829.41 and a nonpriority, unsecured claim for $7,957.35.

Rita later filed amended objections to both claims. In her supporting memoranda, Rita argued that the full amount of both Carey's and Richard's claims had been discharged in her 2016 Bankruptcy, because the creditors had "not file[d] an adversary proceeding" and there was "no legal determination that the debt was nondischargeable."

Rita's proposed plan for the 2022 Bankruptcy treated both Richard's and Carey's claims as general unsecured claims and did not provide for payment on either claim. Both Richard and Carey filed objections to the confirmation of the proposed chapter 13 plan.

---

[7] Although Rita argued that Carey calculated the accrued interest incorrectly, her alleged total amount of the claim was only $12.36 less than the proof of claim filed by Carey ($38,563.49 is Rita's asserted total amount of the claim and the total amount of the claim filed by Carey was $38,575.85).

**C.    Bankruptcy court's memorandum decision**

On April 28, 2023, after an evidentiary hearing, the bankruptcy court entered a memorandum decision overruling Rita's objections to each proof of claim ("Decision").

The bankruptcy court began by acknowledging that the allowance or disallowance of each proof of claim was a separate issue, but because there was significant overlap in issues of fact and law, the bankruptcy court would rule on both claims in the same decision. In the Decision, the bankruptcy court determined: (1) what amount, if any, of the debt represented in each proof of claim was discharged in Rita's previous bankruptcies; (2) what amount, if any, of the debt represented in each proof of claim was a § 523(a)(5) DSO debt entitled to priority; and (3) the correct amount of each proof of claim.

**1.    Effect of prior bankruptcies**

**a.    2012 Bankruptcy**

The bankruptcy court determined that Carey was precluded from asserting that the portion of his proof of claim relating to the State Court Judgment was a DSO entitled to priority, because the issue had been previously presented and ruled on by the bankruptcy court in Rita's 2012 Bankruptcy.

The 2012 bankruptcy court did not make any rulings as to Richard, because Richard's State Court Judgment (creating the debt identified in his later filed proof of claim) was not awarded until 2014. Therefore, the

bankruptcy court found that the 2012 Bankruptcy had no effect on Richard's proof of claim filed in the 2022 Bankruptcy.

### b. 2016 Bankruptcy

The bankruptcy court determined that the letter rulings in the 2016 Bankruptcy did not constitute an order and, therefore, had no preclusive effect in the current bankruptcy as to the amount or characterization of either proof of claim.

The bankruptcy court also determined that because Carey's and Richard's claims were of the type described in § 523(a) (but not § 523(a)(2), (4), or (6)), the claims were "not discharged in the 2016 case, even though no adversary proceeding ha[d] yet determined their dischargeability."

### 2. DSO determinations

### a. Carey's proof of claim

The bankruptcy court examined and summarized the evidence supporting Carey's proof of claim (copies of the judgments and the order allowing attorneys' fees and costs and disbursements). The bankruptcy court then analyzed current case law relating to § 523(a)(5) (DSO) and § 523(a)(15) (other debts incurred in the course of a divorce).

Based on its review, the bankruptcy court summarized its understanding of current case law, stating that "attorney fees from litigation over support of a child are in the nature of child support whenever they were incurred in a proceeding to determine the child's best interest." The bankruptcy court also found that financial need was not

11

determinative when characterizing the nature of an attorneys' fees award. Rather, "in child-custody proceedings, all fees incurred by any participant are child support, regardless of which party has custody and regardless of which ex-spouse is in greater need of support."

The bankruptcy court determined that from the evidence presented, the State Appellate Judgment would be allowed as a DSO. The bankruptcy court explained that because Rita's appeal was from a judgment changing child custody, the appeal was effectively an extension of a child-custody proceeding begun in the Rita and Carey Dissolution and Child Custody Action, "making the court of appeals' attorney-fee award against Rita a debt to Smith for child support nondischargeable pursuant to § 523(a)(5) and entitled to priority pursuant to § 507(a)."

### b.    Richard's proof of claim

The bankruptcy court found that neither of Rita's objections to Richard's proof of claim challenged his entitlement to priority of 80 percent of his claim. Therefore, 80 percent of Richard's proof of claim would be allowed as a DSO entitled to priority pursuant to § 507(a).

### 3.    Bankruptcy court's calculation of each proof of claim

Because Rita objected to the amount of each proof of claim, the bankruptcy court was tasked with determining the correct amount for each claim. The bankruptcy court rejected Rita's argument that simple interest required that all her payments be first applied to the principal rather than accrued interest. The bankruptcy court found that Rita provided no legal

12

support for her proposition. Furthermore, the bankruptcy court found that Rita's proposed method of calculation was contrary to the "United States [R]ule," which directed partial payments to apply first to the interest due, and if the payment exceeded the interest, then the surplus would be applied toward principal, as explained in *First Nat. Bank of Portland v. Courtright*, 161 P. 966, 967-68 (1916), and *Ainslie v. Spolyar*, 926 P.2d 822, 828 (Or. App. 1996).

As to the amount of each proof of claim, the bankruptcy court summarized the calculations and evidence supporting each party's position as argued in their briefing and through their testimony at the evidentiary hearing.

### a. Carey's proof of claim

The bankruptcy court found that based on the evidence, Rita was not challenging the amount of Carey's proof of claim related to the State Court Judgment, which was $28,601.20 ($15,000 plus accrued interest of 9% per annum). Therefore, the bankruptcy court determined that $28,601.20 was accurate and allowed as to the amount owing on the State Court Judgment.

As to the remaining part of Carey's proof of claim, that which related to the State Appellate Judgment, the bankruptcy court found Carey's testimony and evidence more credible, stating, "I credit his testimony and not hers," with the exception of $1.00 that Carey had failed to credit. The bankruptcy court determined that if Carey had credited the $1.00, then $0.45 of interest would not have accrued. Based on its review of the record

13

and its own calculations, the bankruptcy court determined that the DSO part of Carey's proof of claim would be "reduced from $9,974.65 by $1.45 to $9,973.20."

Based on the foregoing, the bankruptcy court allowed Carey's proof of claim as "(1) claim with 507(a)(1) priority for $9,973.20, which is the petition-date balance" under his State Appellate Judgment, and "(2) as a nonpriority, unsecured claim for $28,601.20, which is the petition-date balance" under his State Court Judgment.

### b. Richard's proof of claim

Both Rita and Richard provided the bankruptcy court with spreadsheets explaining their calculations. After reviewing the spreadsheets and supporting documentation and taking testimony, the bankruptcy court conducted its own calculations and determined that at the petition date, the balance due under Richard's State Court Judgment was $83,264.55.[8] Based on its previous determination that 80 percent of Richard's claim would be allowed as a priority claim, the bankruptcy court allowed Richard's proof of claim in the total amount of $83,264.55, with $66,611.64 allowed as a DSO entitled to priority and the remaining $16,652.91 allowed as a general unsecured claim.

Rita timely appealed.

---

[8] The bankruptcy court created a spreadsheet detailing its calculations and included it as an attachment to the Decision.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in determining that part of each proof of claim was a DSO?

Did the bankruptcy court err in its calculations as to the amount of each proof of claim?

Did the bankruptcy court err when it determined that the debts were not discharged in the 2016 Bankruptcy?

## STANDARDS OF REVIEW

In the context of claim objections, we review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *See Pierce v. Carson (In re Rader)*, 488 B.R. 406, 409 (9th Cir. BAP 2013) ("An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues[,] . . . which we review for clear error.") (citation omitted); *Seixas v. Booth (In re Seixas)*, 239 B.R. 398, 401 (9th Cir. BAP 1999) ("We review the bankruptcy court's factual determination that a debt was for alimony, maintenance, or support for clear error.").

A factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 & n.21 (9th Cir. 2009) (en banc). "Where there are two permissible views

of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

We review the bankruptcy court's legal conclusions, including its interpretation of provisions of the Bankruptcy Code and state law, de novo. *Roberts v. Erhard* (*In re Roberts*), 331 B.R. 876, 880 (9th Cir. BAP 2005), *aff'd*, 241 F.App'x 420 (9th Cir. 2007). De novo review requires that we consider a matter anew, as if no decision has been rendered previously. *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).

## DISCUSSION

**A.    The bankruptcy court did not commit clear error in determining that a portion of each proof of claim was a DSO.**

On appeal, Rita argues that the bankruptcy court erred in determining that part of each of Carey's and Richard's proof of claim was a DSO entitled to priority pursuant to § 507(a)(1). Rita argues the bankruptcy court did not have sufficient evidence to find that any part of either proof of claim was "in the nature of support." Rita asserts that the only evidence the bankruptcy court relied upon was the 2016 bankruptcy court letter rulings. We disagree.

### 1.    The bankruptcy court did not err in determining that 80 percent of Richard's proof of claim was a DSO entitled to priority.

Prior to this appeal Rita disputed the total amount of Richard's claim but she did not dispute that 80 percent of the total claim was a DSO entitled to priority. Yet, Rita now argues for the first time that there was

16

insufficient evidence for the bankruptcy court to make that determination.

Generally, an issue will be "deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it." *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp. (In re Mercury Interactive Corp. Sec. Litig.)*, 618 F.3d 988, 992 (9th Cir. 2010) (internal quotation marks and citation omitted). Because Rita did not argue to the bankruptcy court that there was insufficient evidence to determine that 80 percent of Richard's claim was a DSO entitled to priority, we are not required to address the issue on appeal. As such, we will not review or disturb the bankruptcy court's determination that 80 percent of Richard's claim was a DSO entitled to priority.

**2.     Carey's State Appellate Judgment was entitled to priority.**

As to Carey's proof of claim, contrary to Rita's argument, the bankruptcy court did not rely on the 2016 bankruptcy court letter rulings when deciding what part, if any, of the claim was entitled to priority. Indeed, the bankruptcy court specifically determined that the 2016 letter rulings were not orders, were "not preclusive either as to priority or amount," would not be considered evidence, and were not part of the bankruptcy court's Decision.

Rather, the bankruptcy court relied upon the testimony and documents (including copies of the judgments) provided by the parties in their briefing and at the evidentiary hearing. The bankruptcy court also looked to Oregon state law regarding a state court's discretion to award

17

attorneys' fees as part of child custody hearings and federal bankruptcy law interpreting and applying § 523(a)(5) and (a)(15).

Section 523(a)(5) excepts from discharge any child or spousal support payment resulting from a separation or divorce agreement.[9] Cases in the Ninth Circuit and in other circuits generally hold that attorneys' fees awarded in connection with a dissolution proceeding are nondischargeable in bankruptcy under § 523(a)(5) as alimony, maintenance, or support. *Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 682–84 (9th Cir. BAP 1994), *aff'd*, 92 F.3d 1192 (9th Cir. 1996).

Similarly, "the vast majority of reported decisions dealing with an award of attorneys' fees in a child custody proceeding have concluded that the fees were in the nature of the child's support within the meaning of § 523(a)(5)." *Rehkow v. Lewis (In re Rehkow)*, BAP No. AZ-05-1395-AMoS, 2006 WL 6811011, *3 (9th Cir. BAP Aug. 17, 2006) (collecting cases), *aff'd*, 239 F. App'x 341 (9th Cir. 2007). Courts have reached this conclusion because "determination of child custody is essential to the child's proper 'support,' [and] attorney fees incurred and awarded in child custody litigation should likewise be considered as obligations for 'support,' at least in the absence of clear indication of special circumstances to the contrary." *Id.* at *4. "The legal question is not whether repayment of the debt will

---

[9] Congress has defined a domestic support obligation as a debt "in the nature of alimony, maintenance, or support[,] . . . without regard to whether such debt is expressly so designated." § 101(14B).

18

benefit the children, but whether the basis of the debt benefitted the children." *Leibowitz v. Cnty. of Orange (In re Leibowitz)*, 217 F.3d 799, 803 (9th Cir. 2000).

In this case, Carey's State Court Judgment indicated that Carey was awarded attorneys' fees and costs as the prevailing party in the Rita and Carey Dissolution and Child Custody Action pursuant to ORS 20.075 and ORS 107.135.[10]

The appellate order affirming the State Court Judgment explained the money award and described the appealed judgment as "changing custody of the parties' children from mother to father." The Oregon Court of Appeals subsequently entered the State Appellate Judgment which awarded Carey attorneys' fees and costs as the prevailing party in the appeal.

The bankruptcy court did not clearly err in determining that the appeal was a continuation of the child custody proceedings that started in the Rita and Carey Dissolution and Child Custody Action. There was sufficient evidence for the bankruptcy court to find that the attorneys' fee debt was incurred while litigating child custody proceedings in which

---

[10] In Oregon, ORS 107.135(1)(a) allows a party to move to modify support, custody, and parenting time based on a substantial change in circumstances if it would be in the child's best interests. *See In re Travis*, 237 P.3d 868, 870 (2010) (applying factors from ORS 107.137(1)). And, when a party seeks to modify the custody arrangement, the court has discretion to award "a reasonable attorney fee and costs for the benefit of the other party" pursuant to ORS 107.135(8). *Dickson v. Abrams (In re Abrams)*, No. 20-61372-TMR13, 2021 WL 4483102, at *4 (Bankr. D. Or. Sept. 30, 2021).

issues involving the best interests of the child were in dispute, and therefore, the proceedings were in the nature of support and thus, non-dischargeable in bankruptcy. *In re Rehkow*, 2006 WL 6811011, at *4 ("We . . . hold that attorneys' fees incurred in child custody proceedings in which issues involving the best interests of the child are in dispute are in the nature of support and, thus, non-dischargeable in bankruptcy."); *see also Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1141 (9th Cir. 1998) (explaining the nature of the debt was determinative and holding guardian ad litem fees were DSOs pursuant to § 523(a)(5) because the fees were incurred for the child's benefit and were in the nature of support for that child).

The bankruptcy court did not commit clear error in determining that the portion of Carey's proof of claim relating to the State Appellate Judgment, including accrued interest, was a DSO.

**B.    The bankruptcy court did not commit clear error in determining that the claims were not discharged in Rita's 2016 Bankruptcy.**

On appeal, Rita also argues that the bankruptcy court erred in allowing Richard's and Carey's claims because both claims were discharged in her 2016 Bankruptcy. According to Rita, there was no adversary proceeding as to the nondischargeability of the debts identified in either Richard's or Carey's proof of claim. Therefore, she concludes that, "with the absence of such a proceeding, the logical conclusion is that the debts were discharged" in the 2016 Bankruptcy. Rita points to no law

20

supporting her argument.

Generally, § 523(a), the statute pertaining to debts excepted from discharge, states that a discharge under chapter 7 and chapter 13 does not discharge a debtor from debts of the kind described in nineteen subsections. These include § 523(a)(5), which covers debts for domestic support obligations, and § 523(a)(15), which applies to any debt to a spouse or former spouse incurred by the debtor in the course of a divorce.

Section 523(c) provides that debts of the kind described in subsections (2), (4), or (6) of § 523(a) are discharged **unless** a creditor brings a timely adversary action and the court determines such debt to be excepted from discharge. There is no comparable requirement for any other subsection.

Contrary to Rita's assertions, the dischargeability of § 523(a)(5) and (a)(15) debts is solely dependent upon the nature of the debt, not upon whether the creditor files an adversary action. Rita's argument attempts to add § 523(a)(5) and (a)(15) to § 523(c). The statute does not support this argument. *Adam v. Dobin* (*In re Adam*), BAP No. CC-14-1416-PaKiTa, 2015 WL 1530086, at *6 (9th Cir. BAP Apr. 6, 2015) ("After [BAPCPA], debts falling under section § 523(a)(15) are no longer included in the category of debts that are discharged automatically if a party does not request a determination from the bankruptcy court."), *aff'd*, 677 F. App'x 353 (9th Cir. 2017).

Therefore, there is no merit to Rita's allegation that a debt described

in § 523(a)(5) and/or (a)(15) is somehow discharged, even temporarily or conditionally, until the debt is determined to be nondischargeable in an adversary proceeding. The bankruptcy court did not err in finding that Richard's and Carey's claims were not discharged in Rita's 2016 Bankruptcy.

**C.** **The bankruptcy court did not commit clear error in determining the amount of each claim**.

On appeal, Rita argues that the bankruptcy court erred in its calculations as to the amounts of the claims. Rita simply repeats the same arguments and presents the same evidence that she presented to the bankruptcy court at the evidentiary hearing.

Contrary to Rita's assertions, the bankruptcy court carefully considered all of the evidence and testimony when determining that both Carey and Richard were more credible than Rita as to when payments were made and the amounts of such payments. Accordingly, the bankruptcy court's findings are entitled to great deference. *See Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1201 (9th Cir. 2012) ("When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to those findings.") (alterations omitted).

Although Rita does not agree with the bankruptcy court's findings, she fails to identify specific factual findings that constitute error. Based on the record provided, we cannot find the bankruptcy court's factual findings were illogical or without support. Therefore, the bankruptcy court did not

commit clear error in calculating the amounts of the claims including the calculation of interest.

## CONCLUSION

Based on the foregoing, we AFFIRM.