**In re Robert J. PERRY, Debtor.**

**Robert J. Perry, Plaintiff,**

**v.**

**Division of Child Support Enforcement Department of Social Services Commonwealth of Virginia, Defendant.**

Bankruptcy No. 00–70101–S.

Adversary No. 00–7011–S.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Sept. 19, 2000.

Timothy V. Anderson, Virginia Beach, VA, for plaintiff.

G. Scott Darnell, Virginia Beach, VA, for defendant.

### Memorandum Opinion and Order

STEPHEN C. ST. JOHN, Bankruptcy Judge.

This matter came upon a Complaint to Determine the Dischargeability of a Debt filed by Robert J. Perry, the debtor. On August 15, 2000 this Court conducted a trial to determine the dischargeability of the debtor's debt to the Division of Child Support Enforcement Department of Social Services of the Commonwealth of Virginia ("Department"). After taking the matter under advisement, this Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The issue before this Court is whether the debtor may receive a discharge of his debt owed to the Commonwealth of Virginia ("Commonwealth"). Moreover, if the debt may not be discharged, under which provision of Title 11 is the debt nondischargeable? To solve this issue, the debt must be divided into two types of debt. The debt at issue before this Court arises from payments the Department made to the debtor's spouse under the Aid to Families with Dependent Children (AFDC) program. The stipulated facts demonstrate that the debt consists of AFDC payments made before and after the Department issued the Administrative Support Order ("ASO") in 1990.[1]

In 1988, the debtor's wife applied for AFDC benefits. As required by law, the debtor's wife assigned her child support rights to the Department in exchange for AFDC benefits. As a result, in July 1990 the Department issued an ASO to accomplish two objectives. First, the ASO ordered the debtor to reimburse the Department $3021.00 for public assistance paid to the debtor's spouse from July 1988 until June 1990 ("reimbursement debt"). Second, the ASO ordered future child support payments in the amount of $231 per month. The debtor failed to make such payments. As a result of the assignment of child support rights to the Department, the debtor's failure to pay according to the

---

1. The Department began making these payments to the debtor's spouse in July of 1988. At such time, the debtor and his spouse were married, but the debtor, a member of the United States Army, was stationed in South Carolina. Between July 1988 and 1991, the debtor claims to have made payments of $2800 per month to his wife to support his family. The debtor, however, provided no evidence of such payments, and the Court makes no such finding. The debtor also claims to have had no knowledge of his wife's receipt of AFDC assistance. Similarly, the debtor claims to have no knowledge of his wife's receipt of medicare assistance between 1988 and 1995. The debtor and his wife separated sometime during the summer of 1992 and a divorce followed.

terms of the ASO resulted in another debt to the Department in the amount of $6008.93 for the payments missed since the Department issued the 1990 ASO ("post-judgment debt").

The debtor neither appealed to an administrative hearing officer nor did the debtor appeal to the Virginia Beach Juvenile and Domestic Relations Court. On June 5, 1995 Judge William T. Stone of the Juvenile and Domestic Relations District Court of the City of Virginia Beach entered an order enforcing the 1990 ASO.

On January 21, 2000 the debtor filed a voluntary petition for bankruptcy under Chapter 7. On Schedule F, the debtor listed the Department as holding an unsecured nonpriority claim. Seeking to discharge this debt through his Chapter 7 bankruptcy, the debtor filed a Complaint to Determine the Dischargeability of this debt against the Commonwealth of Virginia.[2] Combining the reimbursement and postjudgment debts, the debtor is attempting to obtain a Chapter 7 discharge of his debt of $9029.93. The amount of this debt has been appropriately limited to the amount stated in the ASO pursuant to the requirement that "[w]here there has been a court order for support, final decree of divorce ordering support, or administrative order under the provisions of this chapter for support, the debt shall be limited to the amount of such order or decree." Va.Code Ann. § 63.1–251 (Michie 1995). The debtor and the Commonwealth also have stipulated that the assignment of child support rights is required under 42 U.S.C. § 608(a)(3) (section 408(a)(3) of the Social Security Act) and that the Department is an agency created under part D of the Social Security Act. *See* 42 U.S.C. § 601 *et seq.* (West 2000).

## CONCLUSIONS OF LAW

The distinction between the postjudgment debt and the reimbursement debt is a distinction of great importance to the parties in this case, although this Court is of the impression that the distinction is largely academic and blurred in its practical impact. Nonetheless, to illustrate the potential importance of the distinction, the reimbursement and postjudgment debts must be evaluated independently to determine if, and on what grounds, these debts are nondischargeable. The Court first addresses the non-dischargeability of the postjudgment debt. Next, the Court focuses on the most contentious issue presented, namely the non-dischargeability of the reimbursement debt.

## I. THE POSTJUDGMENT DEBT

As to the postjudgment debt, both parties agree that it is nondischargeable. The parties, however, disagree as to the basis for making such a holding. The Commonwealth urges this Court to hold the postjudgment debt nondischargeable under 11 U.S.C. § 523(a)(5), whereas the debtor argues that the debt is nondischargeable only under 11 U.S.C. § 523(a)(18) and 42 U.S.C. § 656(b). Although the postjudgment debt is nondischargeable under § 523(a)(18), it is also nondischargeable under § 523(a)(5), as well as under § 656(b) of the Social Security Act.

### A. 11 U.S.C. § 523(a)(5) [3]

■ Section 523(a)(5) of the Bankruptcy Code excepts from discharge any

---

**2.** Although the debtor initiated this adversary proceeding against an agency of the Commonwealth, the Commonwealth has not raised any jurisdictional defenses.

**3.** (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—. . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

debt to a spouse "in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit...." 11 U.S.C. § 523(a)(5). The exception to the rule applies if the debt has been assigned, either voluntarily or by operation of law. *See id.* § 523(a)(5)(A). This exception, however, does not apply if the assignment is made pursuant to 42 U.S.C. § 608(a)(3). *See id.* Therefore, to determine if a debt is nondischargeable under § 523(a)(5), the Court must analyze to whom the debt is owed and from what the debt derives.

■ In the instant case, the debt is based upon the debtor's child support obligation owed to his spouse. As the parties have stipulated, the debtor's spouse was required to assign her child support rights under 42 U.S.C. § 608(a)(3) in order to receive AFDC benefits. Therefore, the instant case presents an example of the Bankruptcy Code's provision to allow assignment of child support debts pursuant to the Social Security Act and still prohibit the dischargeability of such a debt in bankruptcy.

The second issue to confront is from where the debt derives. The debt in this case is not "in connection with a separation agreement, [or] divorce decree." *Id.* Nonetheless, this debt does fall under § 523(a)(5) because it was made in connection with an order from a court of record, or, in the alternative, from a determination by a governmental unit consistent with the law in the Commonwealth. *See id.* It has been held that a Juvenile and Domestic

Relations Court in Virginia is a court of record for purposes of § 523(a)(5) even though Virginia may label it a court not of record. *See Croteau v. Croteau (In re Croteau),* 246 B.R. 254, 257 (Bankr. E.D.Va.2000). Therefore, the 1995 order entered by the Virginia Beach Juvenile and Domestic Relations Court enforcing the ASO should be sufficient for the purposes of § 523(a)(5). In the alternative, the *Croteau* court held that a juvenile and domestic relations court would constitute a governmental unit. *See id.* at 258. Either way, an order from such a court or governmental unit would meet the requirement set out in § 523(a)(5). Having met the statutory requirements, this Court holds the postjudgment debt to be nondischargeable under § 523(a)(5).

### B. 11 U.S.C. § 523(a)(18) [4]

■ To be nondischargeable under § 523(a)(18), the debt must be "owed under State law to a State," be "in the nature of support, and ... enforceable under Part D of title IV of the Social Security Act (42 U.S.C. 601 et seq.)." The parties in this case have stipulated that the postjudgment debt is enforceable under 42 U.S.C. § 601 *et seq.* Moreover, the postjudgment debt is owed to the Commonwealth under its state law. Finally, as discussed below, the governing state law is a remedial measure designed to enforce a noncustodial parent's child support obligations. Therefore, the debt is in the nature of support. Finding all elements to be present, this Court holds that the postjudgment debt is nondischargeable under § 523(a)(18).

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State).
11 U.S.C. § 523(a)(5)(A).

**4.** (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—...

(18) owed under State law to a State or municipality that is—
(A) in the nature of support, and
(B) enforceable under part D of title IV of the Social Security Act (42 U.S.C. 601 et seq.).
11 U.S.C. § 523(a)(18).

682

## C. 42 U.S.C. § 656(b) [5]

■ Section 656(b) of the Social Security Act is a mirror image of § 523(a)(18). Consequently, this Court's analysis of its application to the instant case is very similar to the analysis reviewed above. Section 656(b) prohibits the discharge of a debt in bankruptcy if the debt is "in the nature of support and ... enforceable under [the Social Security Act]." 42 U.S.C. § 656(b). As noted above, the parties have agreed that the postjudgment debt is enforceable under the Social Security Act. Moreover, this Court has already held that the postjudgment debt is in the nature of support and owed to the Commonwealth under its law. Therefore, the postjudgment debt is also nondischargeable under § 656(b).

## II. REIMBURSEMENT DEBT

The most contested issue before this court is whether the reimbursement debt is nondischargeable. The debtor argues that the reimbursement debt is dischargeable because (1) the reimbursement debt, including the ASO, is invalid under state law; (2) the imposition of the reimbursement debt by the ASO violates the Ex Post Facto Clause of the Constitution; (3) the circumstances surrounding the imposition of the ASO, specifically the reimbursement debt, violated Perry's due process rights; and (4) § 523(a)(5) of the Bankruptcy Code does not apply to deny the dischargeability of the reimbursement debt.[6] The Court rejects all of these arguments.

As a preliminary matter, however, the Court addresses the debtor's argument that his spouse had no rights to assign prior to 1990. Consequently, the debtor contends, any imposition of debt based

upon such a meaningless assignment is without merit because there was nothing to assign. A brief review of Virginia law as to when support rights accrue demonstrates the error in debtor's argument. After disposing of this preliminary argument and rejecting the debtor's constitutional defenses, this Court's opinion focuses on the nondischargeability of the reimbursement debt.

## A. Validity of the ASO and 1995 Order

The debtor's first argument contends that the ASO and 1995 order are both invalid. The debtor concludes that if such orders are invalid, then the debt underlying those orders are invalid as well. The Court addresses each of the debtor's arguments in turn.

### 1. Rooker–Feldman Doctrine

■ The debtor's argument regarding the invalidity of the ASO and 1995 order to pay the reimbursement debt must be rejected under the Rooker–Feldman doctrine. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The debtor's argument hinges on the validity of a state court order and a state ASO. The Rooker–Feldman doctrine holds that district courts have "no authority to review final judgments of a state court in judicial proceedings." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 198 (4th Cir. 2000). Any shortcomings in the state orders involved in this matter should have been contested through the state court appellate process. See id. at 199; Jordahl v. Democratic Party of Va., 122 F.3d 192, 202 (4th Cir.1997); Leonard v. Suthard,

---

**5.** A debt (as defined in section 101 of Title 11) owed under State law to a State (as defined in such section) or municipality (as defined in such section) that is in the nature of support and that is enforceable under this part is not released by a discharge in bankruptcy under Title 11.

42 U.S.C. § 656(b).

**6.** The debtor also argues that his spouse is a fraudulent recipient of AFDC payments. Without even looking into the merits, this Court rejects such an argument for failure to present any evidence on this matter.

927 F.2d 168, 169 (4th Cir.1991) ("[F]ederal district courts do not have the power to review determinations made in state judicial proceedings."); *In re Hayes,* 235 B.R. 885, 890 (Bankr.W.D.Tenn.1999) ("The only court with jurisdiction to review decisions of state courts is the United States Supreme Court."). Therefore, the validity or invalidity of the ASO or 1995 order is not an issue properly before this Court.

### 2. *AFDC Benefits and Support Rights in Virginia*

Although the validity of state orders is an issue not properly before this court, the existence of a debt is an issue this Court must examine. Consequently, whether the debtor's spouse had any support rights to assign is determinative as to whether any debt was incurred from 1988 to 1990. A brief analysis of Virginia child support law is required and reveals that the reimbursement debt does in fact exist.

■■■ Upon application for AFDC benefits, the applicant must assign any support rights she may have to the Commonwealth as a condition for receiving such aid. *See* 42 U.S.C. § 408(a)(3) (West 2000); Va.Code Ann. § 63.1-251 (Michie 1995). Such debt created and owed to the Commonwealth is nondischargeable in bankruptcy. *See* 42 U.S.C. § 656(b). Pursuant to federal law, Virginia requires that to be eligible for AFDC benefits, the applicant must assign to "the Commonwealth any rights to support" she may have, which have accrued. Va.Code Ann. § 63.1-105.1. The payment of AFDC benefits "creates a debt due and owing to the Department" by the responsible person. *Id.* § 63.1-251. In this case, the debtor's spouse received AFDC payments, therefore creating a debt that the debtor owes to the Department.

■■■ By its very language, what an AFDC benefits applicant must assign is determined by whatever "rights to support" she may have. Consequently, it is necessary to understand when such rights

accrue in Virginia because prior to their accrual, the applicant can have nothing to assign to the Commonwealth. In Virginia, both parents have a duty to support their child. *See Commonwealth v. Johnson,* 7 Va.App. 614, 376 S.E.2d 787, 791 (1989). A noncustodial parent's duty to support may arise in one of three ways. The two most common ways are by court order or divorce decree. *See* Va.Code Ann. § 63.1-252.1. In the absence of these two, however, the Commissioner "may ... proceed against a person whose support debt has accrued or is accruing" based upon AFDC payments. *Id.; see also id.* § 63.1-264 ("The Commissioner may, at any time ... set or reset the amount of debt accrued or accruing, due and owing ... in those cases where there has been no court order for support or final decree of divorce ordering support entered."). The payment of AFDC payments *"creates a debt* due and owing to the Department by the [responsible person]." *Id.* § 63.1-251 (emphasis added). Reading these sections together, it is clear that the third way a noncustodial parent's duty to support accrues is upon the payment of AFDC payments to the custodial parent. *See Commonwealth of Virginia Dep't of Soc. Servs. Div. of Child Support Enforcement v. Broadnax,* No. N-7967-A, 1989 WL 646442, at *2 (Va. Cir. Ct. Nov.17, 1989) ("Section 63.1-252.1 provides that in the absence of a court order for support or a decree of divorce ordering support, the Commissioner of the Department of Social Services may proceed against a person whose support debt *has accrued or is accruing based upon payment of public assistance."* (emphasis added)).

■■ In the instant case, the debtor's spouse applied for AFDC benefits in 1988 and in exchange for receipt of such benefits, assigned any rights to support she had at that time. The AFDC payments made to the debtor's spouse created a debt due and owing by the debtor to the Department. Such payments simultaneously established the support rights of the debtor's

spouse and were in exchange for the assignment of such rights. Therefore, the reimbursement debt was created in July 1988 even though it was not memorialized until 1990 in the ASO. For these reasons, the Court rejects the debtor's argument that the reimbursement debt is invalid.

### B. Constitutional Defenses

#### 1. Ex Post Facto [7]

■ First, the debtor argues that the retroactive application of the 1990 ASO is an ex post facto law in violation of the Constitution. This argument is flawed because the Ex Post Facto Clause applies only to criminal cases or punitive legislation. *See, e.g., Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954); *Bugajewitz v. Adams,* 228 U.S. 585, 590, 33 S.Ct. 607, 57 L.Ed. 978 (1913); *Huffman v. Commonwealth,* 210 Va. 530, 172 S.E.2d 788, 789 (1970) ("[T]he constitutional prohibition against an ex post facto law applies to criminal proceedings and not to civil proceedings."); *see also Rainey v. City of Norfolk,* 14 Va.App. 968, 421 S.E.2d 210, 213 (1992) (holding that the Ex Post Facto Clause did not apply because the civil contempt citation was not punitive).

■ In the instant case, the debtor contends that Virginia's law permitting reimbursement of public assistance paid by way of assigning support rights and enforcing them is an ex post facto law that violates the Constitution. The law, however, is neither punitive nor criminal; rather, the law is designed to ensure custodial parents realize their support rights by using the Commonwealth's public assistance as an intermediary to enforce the noncustodial parent's duty to support his children. Simply stated, the law is an enforcement mechanism for parents who ignore their obligations to their children. As a remedial measure, the law is neither punitive nor criminal, and therefore the Ex Post Facto Clause does not apply.

#### 2. Due Process

■ Next, the debtor contends that enforcement of the ASO violates his right to due process. A review of Virginia's statutory scheme for enforcement of administrative support orders demonstrates that the debtor had every opportunity to enjoy due process. Under Virginia law, although "the Department of Social Services may establish the existence of a debt from a person who owes a duty of support, no enforcement of that debt—and, accordingly, no loss of property—can occur until after notice and hearing which fully comply with constitutional due process standards." *Commonwealth of Virginia Dep't of Soc. Servs. Div. of Child Support Enforcement v. Broadnax,* No. N–7967–A, 1989 WL 646442, at *2 (Va. Cir. Ct. Nov.17, 1989). Notice of an administrative support order must be served on the debtor and must inform the debtor of his right to answer within ten days, his right to an administrative hearing, as well as note his right to appeal the Commissioner's decision. *See* Va.Code Ann. § 63.1–252.1 (Michie Supp.1999). Moreover, the notice must state that the debtor's failure to respond within ten days will result in the administrative order being final and enforceable. *See id.*

■ In the instant case, the evidence at trial demonstrated that the debtor received notice and service of process for the ASO. Mr. Ron Harris, the District Manager of the Department, testified that the Sheriff served the ASO on the debtor by posted process as permitted under Virginia law. The Department also mailed a copy to the debtor. In addition, the debtor failed to respond within the ten day time frame, thus making the ASO final. In 1995, the Virginia Beach Juvenile Domestic Relations Court entered an order to enforce the ASO. Once again, the debtor failed to exercise his appellate right. These procedural mechanisms of notice, service, and the right to appeal all served

---

**7.** U.S. Const. art. I, § 9, cl. 3.

to guarantee the debtor's right to due process. As the court noted in *Broadnax:*

> With regard to due process, this court simply refuses to agree with the court in *Baker [v. Department of Health & Rehabilitative Servs. of the State of Virginia,* 526 So.2d 1057 (Fla.Dist.Ct.App. 1988) ] that a parent who has a legal obligation to support a child but who is unaware that specific public assistance payments are being made on behalf of that child is deprived of due process when he or she is called upon to repay the debt. So long as the statutory safeguards previously discussed (notice, hearing, appeal) are in place prior to collection, due process is fully accorded.

*Broadnax,* 1989 WL 646442, at *4. This court concurs and holds that under the circumstances present in the instant case, no plausible argument exists to find that the debtor's due process rights were violated.

### C. Nondischargeability

The debtor's final contention goes to the crux of the issue: Is the reimbursement debt nondischargeable? The Commonwealth bears the burden of proving the debt is nondischargeable. *See, e.g., Long v. West (In re Long),* 794 F.2d 928, 930 (4th Cir.1986). For reasons discussed in greater detail below, the debt is nondischargeable under 11 U.S.C. § 523(a)(18) as well as under 42 U.S.C. § 656(b). The intriguing, though academic, aspect is whether the debt would be nondischargeable on the basis of § 523(a)(5) alone.

A major basis for the debtor's argument is that the payments made before the 1990 ASO cannot fall under the 11 U.S.C. § 523(a)(5)(A) exception to discharge because it represents a debt voluntarily assigned to the Commonwealth that could not have been assigned pursuant to the Social Security Act. According to this exception, the type of debt involved in this case ordinarily would be excepted from discharge unless it was assigned voluntarily or by operation of law. *See* 11 U.S.C.

§ 523(a)(5)(A) (West 2000). If, however, such an assignment took place pursuant to § 408(a)(3) of the Social Security Act, then the debt would be nondischargeable. *See id.* As discussed below in greater detail, prior case law—since superseded by an act of Congress—prohibited the application of § 523(a)(5) until support rights had accrued. Before their accrual, one would have nothing to assign and therefore § 523(a)(5) would be inapplicable.

Based upon this Court's analysis that support rights accrue upon the payment of AFDC benefits, it would appear that the debtor's argument should fail. If such were the case, then the reimbursement-postjudgment distinction would be meaningless—both would fall prey to the same legal analysis because the support rights accrued in July 1988 when the Department first made the AFDC payments to the debtor's spouse.

Both parties, however, rely on a very recent case entitled *County of Santa Cruz v. Cervantes (In re Cervantes),* 219 F.3d 955 (9th Cir.2000). The court in *Cervantes* faced a nearly identical issue to the one this Court now addresses: "May an absent parent who owes money to the County for child support payments made by the County prior to the entry of a child support order have that debt discharged in a Chapter 13 bankruptcy proceeding?" *Id.* at 957. The only difference in this case from *Cervantes* is that Cervantes was a Chapter 13 debtor, such that § 523(a)(18) was inapplicable, whereas in the instant case, the debtor is seeking a Chapter 7 discharge. Without evaluating the potential impact of § 523(a)(5) to the reimbursement debt, the *Cervantes* court went outside the Bankruptcy Code to hold the debt nondischargeable under § 656(b) of the Social Security Act. *See id.* at 962 (holding that § 656(b) serves as an independent basis to make all such debts nondischargeable under Title 11).

The court's failure in *Cervantes* to explain why § 523(a)(5) did not apply has left this Court to grapple with an issue of

first impression. Since Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193, 110 Stat. 2105 ("Welfare Reform Act"), no court has squarely addressed the issue before the Court today. In *Leibowitz v. County of Orange, (In re Leibowitz)*, 217 F.3d 799 (9th Cir. 2000), the court, facing the same issue before this court, did not apply the Welfare Reform Act because its effective date of July 1, 1997 was ten months after Leibowitz filed bankruptcy. *See id.* at 805. With no retroactive application provision, the *Leibowitz* court could not apply the

Welfare Reform Act. *See id.* It is significant, however, that the *Leibowitz* court did note that the Welfare Reform Act cured problems noted in prior case law that had held § 523(a)(5) could not apply in situations such as the one this Court now faces. *See id.*[8]

Due to the stipulation the parties in this case entered into, however, this Court is forced to assume that no order accompanied the reimbursement debt and therefore that § 523(a)(5) does not apply.[9] Both parties appear to agree that without any order accompanying the prejudgment

---

**8.** Counsel for both parties appear content to ignore the § 523(a)(5) argument with regard to the reimbursement debt. This Court's research has found no case directly evaluating and applying the impact of the Welfare Reform Act of 1996 on § 523(a)(5). Nonetheless, a string of cases seem to provide the basis for how the Welfare Reform Act of 1996 would impact this case.

In *County of Santa Clara v. Ramirez*, 795 F.2d 1494 (9th Cir.1986), a case preceding the Welfare Reform Act, the court held that reimbursement child support debts could not be assigned pursuant to § 602(a)(26) because by definition such rights had not yet accrued. *See id.* at 1497. This holding therefore precluded the application of § 523(a)(5) to reimbursement child support debts. At the time of *Ramirez*, § 602(a)(26) required an AFDC applicant to assign any support rights that had accrued. Because § 656(a) of the Social Security Act referenced § 602(a)(26) in its discussion of a debt that was in the nature of support and, per § 656(b), could not be discharged in bankruptcy, it followed that the nondischargeable debt had to follow a judgment for child support. That is, by definition an assignment of reimbursement support debt was impossible because one can not assign what one does not have. In *Ramirez*, the right to child support did not accrue until a judgment was entered. It followed, then, that no child support rights existed prior to judgment, and thus no such rights could be assigned beforehand.

Congress has since superseded the *Ramirez* rule of law by its passage of the Welfare Reform Act of 1996. In this Act, Congress amended the language of 42 U.S.C. § 656 to eliminate its assignment language by referring to § 608(a)(3) instead of § 602(a)(26) and replacing § 602(a)(26)(A) with § 608(a)(3). Rather than demand the assignment of any support rights that had accrued at the time of assignment, as old § 602(a)(26) had required

previously, the new § 608(a)(3) requires the assignment of any support rights that accrue or have accrued prior to the termination of receiving AFDC benefits. *See* 42 U.S.C. § 608(a)(3) (West 2000).

It appears that but for missing the effective date of the act, the Ninth Circuit Court of Appeals would have held in *Leibowitz* that § 523(a)(5) now did render reimbursement debts nondischargeable. *See Leibowitz*, 217 F.3d at 805 ("If a custodial parent obtains a court judgement for support *before she ceases to receive assistance*—as did Leibowitz's wife—her assignment of pre-judgment debts is now valid." (emphasis added)). The truth of this assertion is largely academic, however, in light of this Court's finding that resolving the academic debate has no practical impact on the effect of this Court's ruling.

**9.** This stipulation has put the Court in the precarious position of ignoring reality in favor of the parties' stipulation. This Court's survey of the law demonstrates that the payment of AFDC benefits may serve as the baseline for when support rights accrue. At such time, the support rights are assigned to the Commonwealth, and the responsible person owes a debt to the Commonwealth. *See* Va. Code Ann. § 63.1–251 (Michie 1995). In the instant case, the initial AFDC payment to Mrs. Perry simultaneously created a debt Mr. Perry owed to the Commonwealth. The 1990 ASO and 1995 court order both confirm this conclusion. Nonetheless, the parties' stipulation that no order accompanied the AFDC payments between 1988 and 1990 coupled with their subsequent assumption that without such an order, no support rights could accrue, have forced this Court to proceed upon such assumption. As noted in the text, however, such assumption does not change this Court's ultimate disposition of the issues before this Court.

AFDC benefits, no support rights could have accrued until 1990. Although this is contrary to this Court's findings, the Court will proceed upon this assumption in light of the Court's conclusion that the assumption the parties make has no impact on the ultimate outcome of the issue before this Court. The remainder of this opinion accepts this assumption and focuses on 11 U.S.C. § 523(a)(18) and 42 U.S.C. § 456(b) as the bases for holding the reimbursement debt to be nondischargeable.

 Another consequence of the Welfare Reform Act of 1996 was to create a new exception to discharge. To address the loophole created when a debt is assigned by operation of law, Congress enacted 11 U.S.C. § 523(a)(18) to provide that debts in the nature of support that are assigned pursuant to the Social Security Act are nondischargeable. *See* 11 U.S.C. § 523(a)(18) (2000). Congress enacted a mirror image provision in 42 U.S.C. § 656(b).

Similar to the postjudgment debt analyzed above, both provisions apply in the instant case to render the reimbursement debt nondischargeable. The reimbursement debt by its very purpose is "in the nature of support" and enforceable under the Social Security Act. Therefore, the AFDC payments between 1988 and 1990 created a debt that is nondischargeable under 11 U.S.C. § 523(a)(18) and 42 U.S.C. § 656(b).

### III.

For the reasons set forth above, this Court ORDERS the postjudgment debt nondischargeable pursuant to 11 U.S.C. § 523(a)(5), (a)(18), as well as 42 U.S.C. § 656(b). It is also ORDERED that the reimbursement debt is nondischargeable under 11 U.S.C. § 523(a)(18) as well as 42 U.S.C. § 656(b). Due to a stipulation and assumption noted earlier, this Court makes no finding as to whether the reimbursement debt would be nondischargeable under 11 U.S.C. § 523(a)(5). In sum, the debtor's debt of $9029.93 owed to the Commonwealth may not be discharged in his Chapter 7 bankruptcy.

IT IS SO ORDERED.