**In re Eddie Jo PITTS, Susan Renee Pitts, Debtors.**

**Eddie Jo Pitts, Plaintiff,**

v.

**State of Missouri, Division of Child Support Enforcement, Defendant.**

**Bankruptcy No. 00–20448.
Adversary No. 00–2041.**

United States Bankruptcy Court,
W.D. Missouri.

April 30, 2001.

484

Noel Magee, Columbia, MO, for debtor.

Steven Kuntz, Jefferson City, MO, for defendant.

Jack E. Brown, Columbia, MO, Chapter 7 Trustee.

## MEMORANDUM OPINION DENYING COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

FRANK W. KOGER, Bankruptcy Judge.

This matter is before the Court on the adversary complaint filed by the debtor/plaintiff, Eddie Jo Pitts, requesting that this Court declare dischargeable a judgment debt owed by Eddie Jo Pitts to the State of Missouri, Division of Family Services in the amount of $8752.00. For the following reasons, the Court will deny the relief sought in the complaint.

### Factual Background

On April 14, 2000, Eddie Jo Pitts and Susan Renee Pitts filed a voluntary petition for rehabilitation under Chapter 13 of the Bankruptcy Code. Thereafter, on July 14, 2000, the case was converted to a Chapter 7. The State of Missouri, Division of Child Support Enforcement ("DCSE") filed a proof of claim alleging an unsecured priority child support debt in the amount of $8752.00 based upon a judgment entered in favor of the State of Missouri, Division of Family Services against Eddie Jo Pitts on November 13, 1998, by the Circuit Court of Saline County, Missouri in Case Number CV496–148. On October 23, 2000, Eddie Jo Pitts filed this adversary complaint contending this judgment debt should be discharged on the grounds that no exceptions to discharge applied. The DCSE filed its answer asserting nondischargeability under 11 U.S.C. § 523(a)(5)(A).

The trial in this matter was held on December 20, 2000. The parties stipulated to the admission of four exhibits, which was the only evidence offered by the par-

ties in support of their respective positions whether the judgment debt was nondischargeable under 11 U.S.C. § 523(a)(5)(A), as well as whether the debt was nondischargeable under 11 U.S.C. § 523(a)(18). Three exhibits were actually admitted into evidence on December 20th. Those were a copy of the November 13, 1998 judgment entered by the Circuit Court of Saline County, Missouri ("Judgment"); a copy of the Support Calculation Summary prepared by the Division of Family Services for use in the Saline County, Missouri cause of action, which reflected a debt owing to the Division of Family Services in the amount of $8752.00 as of September 2, 1998 ("Support Calculation"); and a copy of the Petition for Declaration of Paternity, Order of Support and Custody, Medical Insurance, and Reimbursement of State Debt ("Paternity Petition") filed in Case Number CV496–148 on July 11, 1996. The fourth exhibit, Exhibit 4, which the parties had originally agreed was admissible, was a purported assignment of support rights executed by Shawne Lynn Oliver in favor of the Division of Family Services. However, a court order was required before the Division of Family Services would provide this exhibit to the DCSE. The Court entered the required order and was subsequently notified by the DCSE that the Division of Family Services had produced the exhibit, but that counsel for Pitts now objected to its admission contending that it did not constitute a sufficient assignment of support rights to the Division of Family Services. On February 15, 2001, the Court held a hearing on the admissibility of Exhibit 4, and took the matter under advisement with the remainder of the case. The Court also established a generous briefing schedule for the parties, and requested that the parties address the issue of the admissibility of Exhibit 4 in addition to the question of nondischargeability of the judgment debt. The final brief was filed on March 26, 2001.

The relevant facts culminating in the entry of the $8752.00 judgment debt against Eddie Jo Pitts in favor of the Division of Family Services are set out in the Paternity Petition, Support Calculation and Judgment. Shawne Lynn Oliver [1] and Eddie Jo Pitts are the parents of a child, Jacob Ray Oliver, born out of wedlock on January 9, 1991. From July of 1994 until July of 1998, Shawne Lynn Oliver received aid in the form of cash payments designated as Aid to Families with Dependent Children ("AFDC") from the State of Missouri, Division of Family Services in the total amount of $8752.00. As a condition to receiving AFDC payments, Shawne Lynn Oliver was required to assign to the Division of Family Services any rights to receive child support from another person. *See* Mo.Rev.Stat. § 208.040.2.(2) (1996). On July 11, 1996, the State of Missouri, *ex relatione*, Division of Family Services; Jacob Ray Oliver, by his next friend Shawne Lynn Oliver; and Shawne Lynn Oliver filed the Paternity Petition requesting that the Saline County Circuit Court declare Eddie Jo Pitts the father of Jacob Ray Oliver; order Eddie Jo Pitts to pay reasonable child support retroactive to the date of the filing of the Paternity Petition; order Eddie Jo Pitts to maintain medical insurance on Jacob Ray Oliver and pay for medical expenses for the child not covered by insurance; order Eddie Jo Pitts to reimburse Shawne Lynn Oliver for past support provided for Jacob Ray Oliver; place custody of Jacob Ray Oliver with Shawne Lynn Oliver, subject to rights of reasonable visitation by Eddie Jo Pitts;

**1.** When the Judgment was entered on November 13, 1998, Shawne Lynn Oliver was known as Shawne Lynn McWhirter. For simplicity, the Court will refer to the mother of the child as Shawne Lynn Oliver in this Memorandum Opinion.

order the Division of Health to issue a new birth certificate reflecting Eddie Jo Pitts as the father of Jacob Ray Oliver; and order Eddie Jo Pitts to reimburse the State of Missouri, Division of Family Services for the amount of AFDC payments made to Shawne Lynn Oliver as of the date of judgment, alleging the payments provided the necessaries of life to Jacob Ray Oliver. The State of Missouri, Division of Family Services specifically alleged in the Paternity Petition that:

> Petitioner, State of Missouri, has at all times, since the birth of said minor child or for a period of 60 months prior to the date of filing hereof, whichever last occurred, expected to be reimbursed for support provided to said minor child, and Petitioner, Shawne L. Oliver, has made an assignment of rights and/or has given authority to the State of Missouri to collect support for said minor child.

In the Judgment, the Saline County Circuit Court, in relevant part, found that Eddie Jo Pitts was the father of Jacob Ray Oliver; ordered Eddie Jo Pitts to pay child support in the amount of $300.00 per month beginning October 15, 1998, and ordered same to be paid to the Clerk of the Saline County Circuit Court; found that the State of Missouri, Division of Family Services had paid $8752.00 for necessaries for Jacob Ray Oliver and granted a judgment against Eddie Jo Pitts for that amount; ordered Eddie Jo Pitts to pay an additional sum of $75.00 per month beginning October 15, 1998, to the Clerk of the Saline County Circuit Court to be applied to the judgment awarded the State of Missouri, Division of Family Services until said judgment was paid in full; and awarded joint custody of Jacob Ray Oliver to both parents, but placed physical custody of the child with Shawne Lynn Oliver sub-ject to scheduled visitation by Eddie Jo Pitts.

*Discussion*

1. *Admissibility of Exhibit 4*

Although directed to do so, counsel for Pitts failed to brief the issue of the admissibility of Exhibit 4, instead focusing only on the issue of dischargeability of the judgment debt.[2] Nevertheless, even though Pitts's counsel may have waived this issue, the Court will proceed to make an evidentiary ruling.

As mentioned above, as a condition to receiving AFDC payments, Shawne Lynn Oliver was required to assign to the Division of Family Services any rights to receive child support from another person pursuant to Missouri Revised Statute § 208.040.2.(2). The version of section 208.040.2.(2) in effect at the time the Paternity Petition was filed and the Judgment was entered provides that:

> The division of family services shall require as additional conditions of eligibility for benefits that each applicant for or recipient of aid:
>
> . . . .
>
> Shall assign to the division of family services in behalf of the state any rights to support from any other person such applicant may have in the applicant's own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid. An application for benefits made under this section shall constitute an assignment of support rights which shall take effect, **by operation of law**, upon a determination that the applicant is eligible for assistance under this section. The assignment is effective as to both current and accrued support obligations and authorizes the division of child support en-

---

2. Counsel for the DCSE did brief the issue, as directed by the Court.

forcement of the department of social services to bring any administrative or judicial action to establish or enforce a current support obligation, to collect support arrearages accrued under an existing order for support, or to seek reimbursement of support provided by the division.

Mo.Rev.Stat. § 208.040.2.(2) (1996)(emphasis added).[3]

Likewise, Title 13 of the Missouri Code of State Regulations at section 40–2.335, which is a provision in the Missouri regulations governing the Division of Family Services, states in relevant part that:

PURPOSE: *This rule provides for the assignment of certain support rights as a condition for the receipt of Temporary Assistance.*

(1) For the purpose of the administration of the Temporary Assistance Program the Division of Family Services shall require, as a condition to eligibility for the receipt of assistance, that a member of the family assign to the Division of Family Services any rights the family member may have (on behalf of the family member or of any other person for whom the family member has applied for or is receiving such assistance) to support from any other person, not exceeding the total amount of assistance so provided to the family, which accrue (or have accrued) before the date the family leaves the program....

. . . .

(3) For purposes of the administration of this rule, an application or receipt of Temporary Assistance shall constitute an assignment of such support rights which shall take effect, **by operation of law,** upon a determination that the applicant is eligible for assistance.

Mo.Code Regs. Ann. tit. 13, § 40–2.335(1), (3) (1998)(emphasis added).

Here, the purported assignment produced by the Division of Family Services that the DCSE seeks to have admitted into evidence as Exhibit 4 consists of 9 pages. The first 2 pages of Exhibit 4 appear to be a document related to child support enforcement, which Shawne Lynn Oliver signed on February 1, 1994, and which reflects that she had received an AFDC grant in the amount of $234.00.[4] The third page is a document entitled Notice of Requirement to Cooperate and Right to Claim Good Cause for Refusal to Cooperate in Child Support Enforcement signed by Shawne Lynn Oliver on January 31, 1994, which discusses the benefits of child support enforcement. The fourth page is a document entitled Communication Transmittal dated February 28, 1994, regarding absent parent information, which presumably relates to the child support enforcement documents. The last five pages comprise an Application for Benefits for AFDC signed by Shawne Lynn Oliver on October 16, 1995, which she completed after she gave birth to a second child for whom she sought to obtain additional AFDC benefits. The last page of this document (page 9 of Exhibit 4) contains a provision which states:

I/WE UNDERSTAND that if I am an applicant for or recipient of Aid to Families with Dependent Children (AFDC) from the Division of Family Services, I, by applying for AFDC, have assigned any and all vested, existing rights to medical support and the rights to receive support payments which are past due, currently due, or which will become

---

**3.** Mo.Rev.Stat. § 208.040 was amended in 1999, however, subsection .2.(2) was not affected by the amendment.

**4.** According to the Support Calculation, this was paid monthly.

due in the future to which I am entitled in my own behalf or in behalf of the child or children for whom I am applying for or receiving assistance payments to the State of Missouri. This assignment shall take effect upon a determination of eligibility for AFDC and shall remain in full force and effect so long as I am a recipient of assistance (AFDC). Upon the termination of my receipt of assistance payments, this assignment shall remain in effect as to the unpaid support obligations owing at the time of the discontinuance of assistance payments.

The DCSE presented to the Court the affidavit of Kathy Walker, who is the Director of the Saline County Office of the Division of Family Services, in which she states that although she made a thorough and diligent search of the records of the Saline County Division of Family Services Office, she was unable to locate either the original or a copy of the 1994 assignment of support rights [5] executed by Shawne Lynn Oliver. Ms. Walker stated that it is the policy of the Division of Family Services to purge or "thin" files periodically to make storage space available for new files, and that because of the age of the document in question, it is quite possible that it was destroyed as part of the purging process, or that it is lost.

At the February 15, 2001 hearing, counsel for Pitts objected to admission of Exhibit 4 under Federal Rule of Evidence 1004.[6] Counsel further objected to admission of any of the documents contained in

Exhibit 4 contending that because the DCSE failed to produce a written assignment of support rights dated prior to July of 1994, the documents are insufficient to establish any assignment of support rights from that date forward. Alternatively, counsel objected to the admission of only the documents dated prior to the October 1995 Application for Benefits asserting they are insufficient to establish an assignment of support rights from the period July of 1994 through October of 1995.

Counsel for the DCSE argues that despite the failure of the Division of Family Services to locate an Application for Benefits dated prior to July of 1994 that contains a provision addressing the assignment of support rights which was signed by Shawne Lynn Oliver, it can be inferred from the 1995 Application for Benefits that there was an assignment of support rights that preceded July of 1994, because the application refers to Shawne Lynn Oliver's case as open and adding an additional person, which shows that she had been receiving benefits prior to completing this particular application and supports the inference that she had previously assigned her support rights in order to be eligible to receive AFDC benefits. Counsel further argues that the first four pages of Exhibit 4 build upon and support the inference created by the 1995 Application for Benefits.

■ At the outset, the Court overrules Pitts's counsel's objection based on Federal Rule of Evidence 1004. It is apparent to this Court that the DCSE is unable to

---

**5.** Ms. Walker probably meant the Application for Benefits executed by Shawne Lynn Oliver prior to July of 1994.

**6.** Federal Rule of Evidence 1004 states in relevant part:

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—

**(1) Originals lost or destroyed.** All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

**(2) Original not obtainable.** No original can be obtained by any available judicial process or procedure....

obtain the original documents that comprise Exhibit 4 from the Division of Family Services.[7] The Court will now address Pitts's counsel's alternative objections to the admissibility of Exhibit 4.

■ The Missouri statute and regulation which govern the assignment of support rights both provide that the Application for Benefits shall constitute an assignment of support rights that takes effect **by operation of law** upon a determination that the applicant is eligible to receive AFDC payments. In *Rider v. Julian,* 365 Mo. 313, 282 S.W.2d 484, 492 (1955)(en banc), the Supreme Court of Missouri defined "operation of law" to "express the manner in which rights, and sometimes liabilities, devolve upon a person or persons by the application to the particular situation of express statutory provisions without any act of the party or parties." In this case, pursuant to the pertinent statutory language, as supported by the State regulation, Shawne Lynn Oliver was not required to execute a written assignment of support rights in order for support rights to be assigned to the Division of Family Services. The assignment occurred by operation of law, without the need for any additional action on the part of Ms. Oliver, upon completion of the Application for Benefits and after the Division of Family Services determined that she was eligible to receive AFDC benefits. It necessarily follows that before the Division of Family Services can make a determination whether an applicant is eligible to receive benefits, the person seeking AFDC must complete an Application for Benefits. According to Title 13 of the Missouri Code of State Regulations at section 40–2.010, a written application is required, and following the regulation is an example of an Application for Benefits form. *See* Mo.Code Regs. Ann. tit. 13, § 40–2.010 (1974)("Any person who believes s/he is eligible for or in need of any type of assistance or service administered by the Division of Family Services shall have the right to file an application ... in the county family services office of the county in which the applicant resides on forms furnished by the county family services office."). The receipt of AFDC benefits must necessarily be preceded by completion of an Application for Benefits.

■ There is no question that the Application for Benefits dated October 16, 1995, which is contained in Exhibit 4, combined with the fact that Shawne Lynn Oliver received AFDC payments subsequent to completing that application,[8] establishes that an assignment of support rights occurred beginning in October of 1995. Accordingly, that portion of Exhibit 4 is clearly admissible. A more difficult question to answer is whether the first four pages of Exhibit 4 are admissible to prove an assignment of support rights occurred during the time period July 1994 through October 1995. Although the DCSE was unable to produce an Application for Benefits dated prior to July 1994, the Court agrees with counsel for the DCSE that the Application for Benefits completed in October of 1995 which refers to Shawne Lynn Oliver's case as open and the purpose of the application as adding another person, does infer that Ms. Oliver had been receiving AFDC payments prior to completing this application. In order for Shawne

---

7. It required an order of this Court before the DCSE was able to get even copies of these documents from the Division of Family Services.

8. *See* Support Calculation.

Lynn Oliver to have received AFDC benefits prior to October 1995, she necessarily had to have completed an Application for Benefits before that time. The first four pages of Exhibit 4 consisting of the child support enforcement documents are relevant because they show that as of February 28, 1994, Shawne Lynn Oliver was granted AFDC payments in the amount of $234.00. According to the Support Calculation, Shawne Lynn Oliver received $234.00 per month in AFDC benefits continuously through October of 1995. Shawne Lynn Oliver could not have received AFDC benefits without first completing an Application for Benefits. Thereafter, when the Division of Family Services determined that Ms. Oliver was eligible to receive benefits, by operation of law, an assignment of support rights occurred.

■ This Court would also point out that independent of the assignment of support rights established by Exhibit 4, approximately a year and a half prior to the bankruptcy filing, the Circuit Court of Saline County, Missouri entered a judgment in favor of the Division of Family Services and against Eddie Jo Pitts in the amount of $8752.00, expressly finding that the Division of Family Services paid the amount of $8752.00 *for necessaries for the minor child.* Under well-established principles of res judicata, the Judgment establishes the amount of the debt that Eddie Jo Pitts owes to the Division of Family Services for AFDC payments made to Shawne Lynn Oliver. *See Williams v. Kemp (In re Kemp),* 234 B.R. 461, 465–66 (Bankr. W.D.Mo.1999), *aff'd in part and rev'd in*

*part on other grounds,* 242 B.R. 178 (8th Cir. BAP 1999).[9]

■ In short, the Court rules that Exhibit 4 is admissible in its entirety, and that same, in conjunction with the Support Calculation, which shows the AFDC payments received by Shawne Lynn Oliver each month, firmly establishes that Ms. Oliver applied for AFDC benefits, received AFDC benefits and assigned her support rights, by operation of law, to the Division of Family Services during the relevant time period July of 1994 through July of 1998. Additionally, the Judgment, pursuant to the principles of res judicata, establishes that Eddie Jo Pitts owes the Division of Family Services the amount of $8752.00 for AFDC benefits paid to Shawne Lynn Oliver.

### 2. *Nondischargeability of the Judgment Debt*

■■ Counsel for Pitts adopts the position that there is no impediment to dischargeability of the judgment debt. Counsel for the DCSE asserts that the judgment debt is nondischargeable under either 11 U.S.C. § 523(a)(5)(A) or 11 U.S.C. § 523(a)(18). This Court's independent research reveals that counsel for the DCSE is correct on both grounds, and the judgment debt is clearly nondischargeable. Influencing this Court's decision is the instruction from the Eighth Circuit Court of Appeals that exceptions from discharge for spousal and child support deserve a liberal construction, and that the policy underlying section 523 favors the enforcement of familial obligations over a

9. Pursuant to *Dycus v. Cross,* 869 S.W.2d 745, 749 (Mo.1994)(en banc), the Division of Family Services was required in the state court paternity and support action to produce competent evidence that Shawne Lynn Oliver had assigned her support rights to the State, and that the Division of Family Services had paid the amount of $8752.00 in AFDC benefits to Ms. Oliver for the benefit of the minor child. Implicit in the state court's judgment in favor of the Division of Family Services is a finding that the Division of Family Services met its evidentiary burden.

fresh start for the debtor, even if the support obligation is owed directly to a third party. *See Williams v. Kemp (In re Kemp)*, 232 F.3d 652 (8th Cir.2000); *Holliday v. Kline (In re Kline)*, 65 F.3d 749 (8th Cir.1995).

A. *Nondischargeability under 11 U.S.C. § 523(a)(5)(A)*

■ Section 523(a)(5) of the Bankruptcy Code states in relevant part that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State).

11 U.S.C. § 523(a)(5)(A).

Section 408(a)(3) of the Social Security Act is codified at 42 U.S.C. § 608(a)(3), which states in relevant part:

(a) In general

. . . .

(3) No assistance for families not assigning certain support rights to the State

(A) In general

A State to which a grant is made under section 603 of this title shall require, as a condition of providing assistance to a family under the State program funded under this part, that a member of the family assign to the State any rights the family member may have (on behalf of the family member or of any other person for whom the family member has applied for or is receiving such assistance) to support from any other person, not exceeding the total amount of assistance so provided to the family, which accrue (or have accrued) before the date the family ceases to receive assistance under the program . . . .

42 U.S.C. § 608(a)(3) (Supp.2000).

Four Missouri bankruptcy court cases that have previously addressed this precise issue offer guidance to this Court in resolving the matter in favor of the DCSE. The first case is *Coleman v. McCord (In re McCord)*, 151 B.R. 915 (Bankr.E.D.Mo. 1993). In *McCord*, in the context of a paternity and support action, the Missouri state court entered a judgment, in relevant part, in favor of the State of Missouri Child Support Enforcement Unit against Joseph McCord for $3458.00 for payments made under the provisions of Aid to Families with Dependent Children to Charlotte Marie Coleman on behalf of the minor child born out of wedlock. McCord contended this was dischargeable in his bankruptcy. The Honorable James J. Barta flatly rejected McCord's position. Judge Barta found that the obligation in question was child support, and observed that Coleman was required by Missouri law, specifically Mo.Rev.Stat. § 208.040.2.(2), to assign her right to receive support from any other source to the State of Missouri as a condition of receiving Aid to Families with Dependent Children benefits. Because 11 U.S.C. § 523(a)(5)(A) expressly provides that a debt which is a child support obli-

gation assigned to the state under the federal Social Security Act as a condition for receiving Aid to Families with Dependent Children is not discharged in bankruptcy, Judge Barta determined that the debt was nondischargeable under section 523(a)(5)(A).

In *Donelson v. State of Missouri Department of Social Services, Division of Child Support Enforcement (In re Donelson),* 153 B.R. 995 (Bankr.W.D.Mo.1993), the Honorable Arthur B. Federman faced a similar situation. In *Donelson,* the debtor asserted that his past due child support obligation in the amount of $16,303.00, which was memorialized in both a state court order and an administrative ruling, that the child's mother had assigned to the State of Missouri in exchange for receiving Aid to Families with Dependent Children benefits was dischargeable in his bankruptcy proceeding. Judge Federman ruled that the debt was unquestionably nondischargeable under the specific language of 11 U.S.C. § 523(a)(5)(A).

Likewise, in *Bullock v. State of Missouri (In re Bullock),* 199 B.R. 54 (Bankr. W.D.Mo.1996), Judge Federman rejected the debtor's contention that child support arrearages assigned by the children's mother to the State of Missouri under the Aid to Families with Dependent Children program were dischargeable in bankruptcy. In *Bullock,* the debtor had been ordered by the state court to pay child support in the amount of $261 per month. The debtor failed to do so and when the children's mother received benefits under the Aid to Families with Dependent Children program, child support arrearages in the amount of $16,842.40 were assigned to the State of Missouri in accordance with Mo.Rev.Stat. § 208.040.2(2). Judge Federman found that the arrearage debt was clearly for child support, the debt was assigned to a state governmental unit and

under 11 U.S.C. § 523(a)(5)(A) the debt was nondischargeable.

Finally, in *Furlong v. State of Missouri, Division of Family Services (In re Furlong),* 155 B.R. 517 (Bankr.W.D.Mo.1993), the debtor contended that a debt in the amount of $9622.59 owed to the State of Missouri for Aid to Families with Dependent Children benefits provided to the mother of a child born out of wedlock was dischargeable. In *Furlong,* the child's mother filed a paternity and support action against the debtor in Missouri state court. However, the debtor filed bankruptcy and an adversary proceeding to have the debt declared dischargeable before any judgment was entered in the state court action. This Court discussed Judge Barta's analysis of nondischargeability of a similar debt under 11 U.S.C. § 523(a)(5)(A) in *McCord,* and whole-heartedly agreed with the result reached in that opinion. However, the problem confronting this Court in *Furlong* was the absence of any " 'separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement,' " and, accordingly, in *Furlong,* the debt was outside the protection of section 523(a)(5)(A) leaving this Court with no choice but to declare the debt discharged. This Court stated that: "Child support . . . may not always require a decree as such, but a party cannot be responsible for child support unless the child is acknowledged, or the child is the product of a legal marriage, or there has been a determination of paternity. In this instance, none of these conditions precedent have been met." *Furlong,* 155 B.R. at 518.

Here, the Court is not so constrained. The Circuit Court of Saline County, Missouri entered the Judgment prior to Eddie Jo Pitts's bankruptcy filing. The Judg-

ment establishes Eddie Jo Pitts as the father of the minor child, and granted judgment in favor of the State of Missouri, Division of Family Services against Eddie Jo Pitts in the amount of $8752.00 for the amount of AFDC benefits paid to Shawne Lynn Oliver from July 1994 through July 1998. Eddie Jo Pitts does not seriously contest that the debt in question is for child support and the Court finds that the AFDC benefits paid to Shawne Lynn Oliver were for child support. The Court also finds that Ms. Oliver assigned her right to receive child support from Eddie Jo Pitts to a state governmental unit as a condition of receiving benefits under the AFDC program. Accordingly, all the elements for nondischargeability under 11 U.S.C. § 523(a)(5)(A) have been satisfied and the debt is nondischargeable.

■ Counsel for Pitts maintains that at the very least, a portion of the judgment debt falls outside the protective umbrella of 11 U.S.C. § 523(a)(5)(A). Counsel contends that not all AFDC payments made to the custodial parent are excepted from discharge under section 523(a)(5)(A) merely because an assignment of support rights by the custodial parent has occurred; the critical issue is when the assignment became effective under section 523(a)(5)(A). Counsel asserts that the assignment is effective under section 523(a)(5)(A) when state law gives the custodial parent a right to reimbursement of child support from the non-custodial parent. Counsel argues that in Missouri because there is no outstanding right of reimbursement of child support, the right of reimbursement of child support begins when an action for paternity is served on the non-custodial parent. Counsel argues that under Missouri law, the AFDC payments made to Shawne Lynn Oliver from July 1994 to July 1996 were made pursuant to an assignment that was ineffective under section 523(a)(5)(A) because the right to reimbursement of child support had not accrued until Eddie Jo Pitts was served with the paternity action on or about July 11, 1996. On that basis, counsel argues, all of the AFDC payments made prior to the service of the paternity action lack protection under section 523(a)(5)(A). Counsel concedes that the AFDC payments made after service of the paternity action are excepted from discharge under section 523(a)(5)(A). Counsel asserts the test in Missouri is simple: "To determine whether AFDC payments are excepted from discharge [under section 523(a)(5)(A),] determine when a petition for paternity was served on the noncustodial parent. Any AFDC payments made to the custodial parent after the petition is served are excepted from discharge. Any AFDC payments made to the custodial parent before the petition is served are discharged."

■ Counsel's argument is based upon a misconstruction of Missouri law. First, "[i]t is beyond question that in [Missouri] the father is liable for the support of his illegitimate child." *State of Iowa, ex rel., Nauman v. Troutman*, 623 S.W.2d 269, 271 (Mo.App.1981). Because under Missouri common law the father is liable for the support of his illegitimate child, a putative father of a child owes a legal duty of support for that child. *See id.* at 270–71. *See also Dycus v. Cross*, 869 S.W.2d 745, 750 (Mo.1994) (en banc)("[Putative father] has a common law duty to support his child."). Pursuant to Missouri Revised Statute § 454.410, which is a provision in the Missouri statutes governing the enforcement of child support, "Support rights assigned to the state shall constitute an obligation owed to the state by the person responsible for providing such support and the obligation shall be collectible pursuant to all legal processes." Mo.Rev.

Stat. § 454.410 (Supp.2001).[10] Further, Missouri Revised Statute § 454.465.1 states in pertinent part that:

[A] payment of public assistance by the division of family services to or for the benefit of any dependent child, including any payment made for the benefit of the caretaker of the child, creates an obligation, to be called "state debt", which is due and owing to the department by the parent, or parents, absent from the home where the dependent child resided at the time the public assistance was paid....

Mo.Rev.Stat. § 454.465.1 (Supp.2001).[11]

Finally, Missouri Revised Statute § 210.828.2, which is a provision in the Missouri Uniform Parentage Act governing the statute of limitations for reimbursement for support states that, "A parent's retroactive liability to another party for reimbursement of necessary support provided by that party to the child for whom a parent and child relationship is established under sections 210.817 to 210.852 [the Missouri Uniform Parentage Act] is limited to a period of five years next preceding the commencement of the action [to determine paternity]." Mo.Rev. Stat. § 210.828.2 (1996).

Here, pursuant to Missouri common law, Eddie Jo Pitts had a duty to support his illegitimate child. In accordance with the relevant Missouri statutes, when Shawne Lynn Oliver assigned her support rights to the Division of Family Services, Eddie Jo Pitts became obligated to the State of Missouri for the AFDC payments made to Ms. Oliver. In other words, with each AFDC payment that the Division of Family Services made to Ms. Oliver on behalf of the minor child, there arose a corresponding debt that Eddie Jo Pitts owed to the State of Missouri. The paternity action was filed on or about July 11, 1996, and the state court judgment entered in favor of the Division of Family Services included an award for reimbursement of the AFDC payments made to Shawne Lynn Oliver during the two-year period preceding the filing of the paternity action, which was well within the five-year limitation period. Accordingly, counsel's assertion that the portion of the judgment debt consisting of the AFDC payments made by the Division of Family Services to Ms. Oliver prior to the service of the paternity action should be declared dischargeable, must fail under Missouri law.[12]

**10.** Prior to an amendment effective July 1, 1997, section 454.410 provided that "Support rights assigned to the division of family services in behalf of the state shall constitute an obligation owed to the state by the person responsible for providing such support and the obligation shall be collectible under all legal processes." Mo.Rev.Stat. § 454.410 (1997). *See also* 42 U.S.C. § 656(a)(1) (Supp. 2000)("The support rights assigned to the State ... shall constitute an obligation owed to such State by the individual responsible for providing such support. Such obligation shall be deemed for collection purposes to be collectible under all applicable State and local processes pursuant to section 608(a)(3) of this title.").

**11.** The language of section 454.465.1 was not changed by the 1997 amendments. Addition-

ally, in *Dycus v. Cross,* 869 S.W.2d 745 (Mo. 1994)(en banc), the Supreme Court of Missouri, en banc, held that this statute "creates a legal obligation in a parent to repay the state for payments of public assistance made by the state for the benefit of a child whose parent does not fulfill his or her support obligation" and that same does not violate a father's due process or equal protection rights.

**12.** *See also Perry v. Division of Child Support Enforcement Department of Social Services Commonwealth of Virginia (In re Perry),* 254 B.R. 675, 687 n. 9 (Bankr.E.D.Va.2000)("This Court's survey [of Virginia law] demonstrates that the payment of AFDC benefits may serve as the baseline for when support rights accrue. At such time, the support rights are assigned to the Commonwealth, and the re-

B. *Nondischargeability under 11 U.S.C. § 523(a)(18)*

Section 523(a)(18) of the Bankruptcy Code states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

. . . .

(18) owed under State law to a State or municipality that is—

(A) in the nature of support, and

(B) enforceable under part D of title IV of the Social Security Act (42 U.S.C. 601 et seq.).

11 U.S.C. § 523(a)(18).[13]

Here, the bay horse case resolving this issue is *Leibowitz v. County of Orange (In re Leibowitz)*, 217 F.3d 799 (9th Cir.2000). In *Leibowitz*, the Ninth Circuit Court of Appeals affirmed a decision by the Ninth Circuit Bankruptcy Appellate Panel that an obligation owed by the Chapter 7 debtor to Orange County, California which arose from Aid to Families with Dependent Children payments that the county had made to the debtor's former spouse and children was nondischargeable under 11 U.S.C. § 523(a)(18). The precise issue before the Ninth Circuit was "whether an absent parent who owes money to the county for child support payments made by the county prior to the entry of a child support order can have that debt discharged in bankruptcy." *Leibowitz*, 217 F.3d at 800. Based on recent changes to the bankruptcy and welfare laws, the Ninth Circuit concluded that an absent parent who owes money to the county for child support payments is not entitled to discharge any portion of the debt, including the portion that may have accumulated before the entry of a court order. *Id.*

In *Leibowitz*, the debtor and his wife separated. Thereafter, the wife applied to Orange County for Aid to Families with Dependent Children benefits, and as a condition for receiving AFDC she was required to assign to Orange County any accrued rights to support from the debtor. Subsequently, Orange County obtained a judgment against the debtor which ordered the debtor to pay $372.00 per month in child support and to reimburse Orange County $5580.00 for the AFDC payments made to the wife. The debtor filed for bankruptcy, then filed an adversary complaint seeking to have the judgment debt to Orange County declared dischargeable. Orange County moved for summary judgment contending that the debt was nondischargeable under 11 U.S.C. § 523(a)(18). The bankruptcy court, Ninth Circuit BAP and Ninth Circuit Court of Appeals agreed with Orange County.[14]

sponsible person owes a debt to the Commonwealth.")(citing Va.Code Ann. § 63.1–251 (Michie 1995), which provides that the payment of AFDC benefits " 'creates a debt due and owing to the Department' " by the responsible person). In *Perry*, the bankruptcy court also stated that under Virginia law, the debtor's spouse assigned any rights to support to the Department of Social Services when she applied and received AFDC benefits, that "[t]he AFDC payments made to the debtor's spouse created a debt due and owing by the debtor to the Department" and that "[s]uch payments simultaneously established the support rights of the debtor's spouse and were in exchange for the assignment of such rights." *Perry*, 254 B.R. at 683–84.

**13.** Section 523(a)(18) of the Bankruptcy Code was enacted in 1996 as part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193, 110 Stat. 2105 (Aug. 22, 1996), also known as the Welfare Reform Act.

**14.** Previously, the Ninth Circuit had held that 11 U.S.C. § 523(a)(5)(A) did not protect such debts from discharge based upon the particularities of California law. *See Visness v. Contra Costa County*, 57 F.3d 775 (9th Cir.1995);

The Ninth Circuit noted that in passing the Welfare Reform Act of 1996, Congress made several changes to the law of discharge, including adding section 523(a)(18) to the list of nondischargeable debts. Second, Congress altered 42 U.S.C. § 656(b), which is part of Title IV–D of the Social Security Act, to provide that " '[a] debt ... owed under State law to a State ... or municipality ... that is in the nature of support and that is enforceable under this part [part D of title IV] is not released by a discharge in bankruptcy under Title 11.' " *Leibowitz,* 217 F.3d at 802.[15] The Ninth Circuit opined:

> Two important things stand out about section 523(a)(18) and the new section 656(b). First, they are nearly identical; the only difference is that section 523(a)(18) applies specifically to discharges under sections 727, 1141, 1228(a), 1228(b), and 1328(b) of the Bankruptcy Code, while section 656(b) applies to any discharge under the Bankruptcy Code. Second, neither provision refers to an assignment under 42 U.S.C. § 602(a)(26). Instead, they simply state that a debtor may not discharge a debt that is (1) owed under state law, (2) owed to a state or municipality, (3) in the nature of support, and (4) enforceable under Title IV–D of the Social Security Act.

*Id.* at 802–03. The Ninth Circuit acknowledged that the term "in the nature of support" contained in 11 U.S.C. § 523(a)(18) and 42 U.S.C. § 656(b) was not defined in those sections, then borrowed the definition of "child support" found in 11 U.S.C. § 101(12A) and 11 U.S.C. § 523(a)(5), and ruled that the debt

to Orange County qualified as one "in the nature of support." *Id.* at 803. The Ninth Circuit stated:

> The debt is for the support of [debtor's] former spouse and children, and it derived from a court order—the May 12, 1992 judgment obtained by the County. It is true that the debt is no longer owed to his former spouse or children, as specified in section 523(a)(5), but that is irrelevant. We have held that a debt to third parties "on behalf of a child or former spouse can be 'as much for ... support as payments made directly [to the former spouse or child].' " *In re Chang,* 163 F.3d 1138, 1141 (9th Cir.1998)(alteration in original)(quoting *In re Catlow,* 663 F.2d 960, 962 (9th Cir.1981)).
>
> ....
>
> The basis of Leibowitz's debt is AFDC money received by his former wife. That money benefitted his former wife and children, and so his debt to the County qualifies under the statute as one "in the nature of support."
>
> This conclusion is supported by two provisions of the Social Security Act. The first, 42 U.S.C. § 653(p), defines a "support order" as "a judgment, decree, or order ... for the support and maintenance of a child ... which provides for monetary support, health care, *arrearages, or reimbursement ....*" (emphasis added). The second, 42 U.S.C. § 659(i)(2), defines "child support" as "amounts required to be paid under a judgment ... for monetary support, health care, *arrearages or reimbursement ....*" (emphasis added). These

*County of Santa Clara v. Ramirez,* 795 F.2d 1494, 1497 (9th Cir.1986).

**15.** Section 656(b) states in full: "A debt (as defined in section 101 of Title 11) owed under State law to a State (as defined in such sec-

tion) or municipality (as defined in such section) that is in the nature of support and that is enforceable under this part is not released by a discharge in bankruptcy under Title 11." 42 U.S.C. § 656(b) (Supp.2000).

two provisions are strong evidence that a debt can qualify as "in the nature of support" even if the debt provides no current benefits to the child.

Because Leibowitz's debt to the County derives from AFDC payments made to his former spouse and children, we hold that his debt is "in the nature of support" under 11 U.S.C. § 523(a)(18) and 42 U.S.C. § 656(b).

*Id.* at 803–04.

The Ninth Circuit then addressed whether the debt to Orange County was enforceable under part D of title IV of the Social Security Act. The Ninth Circuit opined:

Title IV–D of the Social Security Act was enacted in 1975 as the Child Support Enforcement Act. *See* Pub.L. No. 93–647, 88 Stat. 2351 (codified as amended at 42 U.S.C. §§ 651–669). Designed to reduce state and federal expenditures for child support, *see Commonwealth of Pennsylvania v. United States Dept. of Health and Human Services*, 80 F.3d 796, 799 (3d Cir.1996), Title IV–D creates a framework for the development of state programs to assist custodial parents in obtaining and enforcing support obligations, locating absent parents, and establishing paternity. *See* 42 U.S.C. §§ 651–669. The Title directs the Secretary of Health and Human Services to oversee the development of these programs, to evaluate their implementation, and to provide technical assistance to the states. *See id.* at § 652(a). It also authorizes the appropriation of money to assist states in their efforts. *See id.* at § 655. States failing to fulfill their duties under Title IV–D risk the loss of federal AFDC funds under Title IV–A. *See* 42 U.S.C. § 602(a)(27); *Freestone v. Cowan*, 68 F.3d 1141, 1143 (9th Cir. 1995), *rev'd on other grounds*, 520 U.S.

329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

Because Title IV–D establishes a general framework for the collection and enforcement of child and spousal support debts by the states, it is unclear what Congress meant by the term "enforceable under Part D of Title IV." ...

. . . .

We think ... that when Congress used the term "enforceable under Part D of Title IV," it was referring to the type of debts the states are instructed to enforce and collect under Title IV–D— namely, debts for child and spousal support. This interpretation is more consistent with the broad language used by Congress and is supported by several structural characteristics of Title IV–D.

First, a state participating in the Title IV–D program must not only collect and enforce child support debts that have been assigned to it by AFDC recipients, but must also collect and enforce child support debts on behalf of non-welfare recipients. *See Blessing v. Freestone*, 520 U.S. 329, 334, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). . . .

. . . .

Second, as pointed out earlier, when Congress passed the Welfare Reform Act, it added the new discharge provision to the Bankruptcy Code at 11 U.S.C. § 523(a)(18) and to the Social Security Act at 42 U.S.C. § 656(b). This latter provision is found in Title IV–D immediately following section 656(a), and it states that "[a] debt ... owed under State law to a State ... or municipality ... that is in the nature of support and that is *enforceable under this part* is not released by a discharge in bankruptcy under Title 11." (emphasis added). If Congress had intended this provision to apply only to debts that are enforceable under section 656(a), it

seems likely it would have used the language "enforceable under this section." But instead, Congress referred to debts that are "enforceable under this part." This is strong evidence that Congress intended to include all child and spousal support debts that the states are instructed to collect and enforce under Part D of Title IV.

Leibowitz owes $5,580 to the County for AFDC payments made to his former spouse and children. Under Title IV–D, this is exactly the kind of debt participating states are required to collect and enforce—whether or not the debt has been assigned pursuant to section 602(a)(26). Therefore, we conclude that his debt to the County is enforceable under Title IV–D and is thus non-dischargeable in bankruptcy.

*Id.* at 804–06.

Within two weeks of filing the opinion in *Leibowitz,* the Ninth Circuit Court of Appeals addressed the same issue in the context of a Chapter 13 debtor. *See County of Santa Cruz v. Cervantes (In re Cervantes),* 219 F.3d 955 (9th Cir.2000). The Ninth Circuit reaffirmed its holding in *Leibowitz* that pursuant to 11 U.S.C. § 523(a)(18) an absent parent is not entitled to discharge a judgment debt for child support owed to a county for AFDC payments made by the county prior to the entry of the judgment; ruled that 42 U.S.C. § 656(b) provides an independent basis upon which to find a child support debt nondischargeable in any bankruptcy proceeding under Title 11, including Chapter 13; and held that, in this case, the $4161.00 judgment debt owed to the County of Santa Cruz for AFDC payments made to the debtor's girlfriend after their child was born out of wedlock met the requirements for nondischargeability under 42 U.S.C. § 656(b).

In *Illinois Department of Children and Family Services v. Spinks (In re Spinks),* 233 B.R. 820, 822 (Bankr.S.D.Ill.1999), the bankruptcy court observed:

The overlap between § 523(a)(18) of the Bankruptcy Code and § 656(b) of the Social Security Act indicates that Congress intended to ensure that certain support obligations owed to the states would not be dischargeable in bankruptcy. *See* H.R. Conf. Rep. No. 104–725, 104th Cong., 2d Sess. at 375 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2649, 2763. Given the substantial delegation of authority from the federal government to the states in the area of public welfare and assistance, these provisions eliminate any question as to the nondischargeability of applicable state claims against support obligors. *Collier on Bankruptcy,* ¶ 523.24 at 523–109 (15th ed. rev.1997).

The bankruptcy court opined that "[t]he fact that the debt now takes the form of reimbursement to the state does not alter its underlying function of providing support for the debtors' children." *Spinks,* 233 B.R. at 824. *See also Perry v. Division of Child Support Enforcement Department of Social Services Commonwealth of Virginia (In re Perry),* 254 B.R. 675 (Bankr.E.D.Va.2000)(Debt in the amount of $9029.93 established by an administrative support order that debtor owed to the Commonwealth of Virginia for AFDC payments made to the debtor's spouse is nondischargeable under 11 U.S.C. § 523(a)(18) and 42 U.S.C. § 656(b).).

 Here, the Court agrees with the reasoning of the Ninth Circuit Court of Appeals in *Leibowitz* and determines that the judgment debt is nondischargeable under 11 U.S.C. § 523(a)(18). Counsel for Pitts asserts that section 523(a)(18) only applies when a state administrative agency

has established the absent parent's duty of child support by means of an administrative order. Counsel argues that because this case involves a state court order and not an administrative order, section 523(a)(18) does not apply to bar discharge of the debt in question. This Court is unable to glean such a restriction from the plain language of section 523(a)(18), and, accordingly, rejects counsel's contention. Section 523(a)(18) applies with equal force to orders entered by a state court, as well as orders entered by a state administrative agency.

*Conclusion*

Based on the above discussion, the complaint filed by Eddie Jo Pitts to determine the dischargeability of a debt owed to the State of Missouri, Division of Child Support Enforcement that is based upon a judgment entered by the Circuit Court of Saline County, Missouri in Case Number CV496–148 against Eddie Jo Pitts and in favor of the State of Missouri, Division of Family Services is DENIED. The judgment debt in the amount of $8752.00 is NONDISCHARGEABLE in Eddie Jo Pitts's bankruptcy under 11 U.S.C. § 523(a)(5)(A) and 11 U.S.C. § 523(a)(18).

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Fed. R. Bankr.P. 7052.